THE PEOPLE OF THE STATE OF NEW YORK, Appellants, v.
LEONIDAS DOTY, Respondent.

| 80 | 225 |
| 116 | 448 |

The term "individual banker," in the provision of the act of 1875, relat-
ing to savings banks (§ 49, chap. 371, Laws of 1875), which declares
it "not to be lawful for any bank, banking association or *individual
banker* to advertise or put forth a sign as a savings bank," applies only
to one who has availed himself of the banking statutes of this State,
and has become empowered to do banking thereunder; it does not
apply to a private banker, who exercises in his business no more than
the rights and privileges common to all.

Defendant and one W. were engaged in conducting a banking business
in a building owned by defendant. They were not organized as bank-
ers. Nor was either of them authorized to do banking business under
the banking laws of the State. They did business under the name
of "The Farmers' Bank of Batavia." Defendant caused to be placed in
plain sight, on the outside of the building, the words "L. Doty's Savings
Bank." In an action to recover penalties, under said act of 1875, for
putting "forth a sign as a savings bank," *held*, that defendant was not
an "individual banker," within the meaning of said act, and that, there-
fore, the action was not maintainable.

The various banking acts expressive of the legislative intent in the use of
the term "individual banker" collated.

*It seems*, that the proper phrase to designate a banker doing business
without having acquired the privileges conferred by the provisions of
the statute, is "private banker," not "individual banker."

(Argued February 4, 1880; decided February 24, 1880.)

APPEAL from judgment of the General Term of the
Supreme Court, in the fourth judicial department, in favor
of defendant, entered upon an order denying a motion for a
new trial and directing judgment on a nonsuit.

The nature of the action of the facts appear in the opinion.

*L. N. Bangs*, for appellant. The right of banking at
common law belonged to the individual, and might be exer-
cised by him in all its various relations, as any trade or occu-
pation. (*Bank of Augusta* v. *Earl*, 13 Peters, 519–596;
*Attorney-General* v. *Utica Ins. Co.*, 2 Johns. Chy., 371–377;
*Curtiss* v. *Leavitt*, 15 N. Y., 9–80; Morse on Banking, 1;
Cleveland's General Banking Laws, 17; *N. Y. Firemen's*

*Ins. Co.* v. *Ely*, 2 Cow., 678–710.)  The common law right of banking remained unabridged in the State of ·New York until the passage by the Legislature of the act of April 11, 1804, which was subsequently modified by various enactments until 1837, when such restraining law was embodied in section 6, title 20, chapter 20, part 1 of the Revised Statutes.  (*Mumford* v. *American Life Ins. and Trust Co.*, 4 N. Y., 463–479; *Attorney-General* v. *Utica Ins. Co.*, 2 Johns. Chy., 371–377; *Curtiss* v. *Leavitt*, 15 N.Y., 9–72, 77–79.)  With or without circulating notes an individual banker takes his character and designation, not by statute, but by the kind of business he transacts.  (*Bank of Havana* v. *Magee*, 20 N. Y., 355, 358; *Codd* v. *Rathbone*, 19 id., 37–39.)  No person can enjoy any of the powers and privileges granted or appointed to associations or corporations, even though for the purpose of conducting his business, he assumes the style of a corporation.  (Morse on Banks and Banking, 2; *Grinnell* v. *Schmidt*, 2 Sandf. Sup. Ct. R., 706–709.)  A complete system for savings banks having been created by statute, it is to be presumed that is the only method permissible.  (*Cook* v. *Kelley*, 12 Abb. Pr. R., 35, 36.)  The defendant, by the assumption of the title "The Farmers' Bank of Batavia," and doing business under that designation practiced a practical fraud upon the public, inducing them to do business with him on the assumption that he was an individual banker under the free banking law.  He is estopped now from denying the fact that he is such banker.  (*U. S. Ex. Co.* v. *Bedbury*, 34 Ill., 459–466.)

*A. P. Laning*, for respondent.  The defendant was not an "individual banker" within the meaning of the term, as used in the statute, and consequently not within its prohibition.  (Chap. 371, § 49, Laws of 1875.)

FOLGER, J.  This is an action brought by the People of the State of New York, to recover of the defendant a large sum as penalties, for putting forth the sign of a savings bank.

It appears in proof, that by the defendant's direction, there was placed, in plain sight, on the outside of the building which he owned and occupied, and in which he and one Warner did a banking business, the words "*L. Doty's Savings Bank;*" that he and Warner did their banking business under the name of "*The Farmers' Bank of Batavia,*" and in that business received deposits of money from divers customers, discounted notes, sold exchange, and did all ordinary banking business, save that they did not issue notes to pass as money. They were not organized as bankers under any law of this State; but took the name of "*The Farmers' Bank of Batavia.*" Nor was the defendant or Warner authorized to be an individual banker under the banking laws of this State.

The complaint alleges that the right of action has accrued, under the forty-ninth section of chap. 371 of the Laws of 1875, passed May seventeenth of that year. That act by its title, is one relating to savings banks; and the forty-ninth section is in these words: " It shall not be lawful for any bank, banking association or *individual banker* to advertise or put forth a sign as a savings banks or in any way to solicit or receive deposits as a savings bank; and any bank, banking association or individual banker *which* shall offend against these provisions shall forfeit and pay for every such offence the sum of one hundred dollars, for every day such offence shall be continued, to be sued for and recovered in the name of the people of this State, by the district attorneys of the several counties, in any court having cognizance thereof, for the use of the poor chargeable to said county in which such offence shall be committed." There is no question which of the offences declared in this section is the one charged upon the defendant; it is that of putting forth a sign as a savings bank. Nor is there question but that he did the act. Whether he penally offended by doing it, hangs alone upon whether he was while doing it an individual banker. For though, as we shall hereafter show, the defendant and his partner, Warner, might as well, in the common acceptation

of terms, have been sued under this section as a bank or a banking association, as the defendant be sued as an individual banker; yet the plaintiffs have seen fit to plead against him as doing the act in the capacity of an individual banker, and have in their pleading spoken of him in that capacity as an individual banker under the laws of this State; and that means under the statute laws of this State in relation to banking; which laws know of but one kind of person as an individual banker. It is somewhat inconsistent with this pleading, that the plaintiffs now contend that the defendant is an individual banker not under the statutes relative to banking, but in what they style the common understanding and usage of that term. They claim to recover on the ground only that as an individual banker he violated the statute. And the contest is what is meant in this section by the two words, "individual banker." There is no contest as to what would be meant by either word if it stood alone. With completeness enough for this case, a banker is one who keeps a place for the traffic in money; who there receives it from others, and keeps it with his own, using the whole fund as his own, or remits it at request to other places; who repays it at the will and call of his customer; who furnishes money to others on the discount of their obligations, or on securities brought by them; and who buys and sells bills of exchange. To these is sometimes added the issuing of his notes to pass as money, when allowed by law to do so. The business of the defendant partook of some or all of these parts, except the issuing of notes. He was a banker. An individual is one entity, one distinct being, a single one, and when spoken of the human kind means one man or one woman. To individualize is to single out from the species. So that the rigid definition of the two words "individual banker" is, one person banking alone. As the defendant did not bank alone, but together with Warner, he was not, in this strict and abstract sense of the words, an individual banker. And as this action is for a penalty, perchance we would break no rule if we construed

the section thus strictly in favor of the defendant. There will be no need of só narrow a reading of it. This rigid rendering is put, to show that elsewhere than in it must the plaintiffs seek the legislative meaning in the use of the term "individual banker," if they are to maintain their action. The plaintiffs' contention is that the Legislature used the word "individual" in the sense of natural, and that by the words "individual banker," it meant such a banker as any one or more members of the commonwealth may be, in the exercise of no more than the rights common to all, and not resting on any special franchise or privilege derived from positive law. That is to say, that individual banking is that which is distinguished from banking done under a special charter given by the sovereign and creating a corporation, or by an association formed under a general statute, and is such banking as is dependent on no corporate or granted right. In that sense, it would matter not that a person had jointly ventured in banking with another, or with several; they would not be a corporation or an association resting upon statutory permission. He and they would be partners or co-adventurers, and would all be individual bankers. We do not think that contention can be maintained. Had this statute been the first use of the phrase, or had there been prior statutory use of it in that sense, there would be more plausibility in this claim. But it is not a new phrase in legislation upon the subject of banking, nor with that meaning, commonly used in acts. Chapter 363, Laws of 1840, page 306, section 4, is quite significant: "No banking association, or individual banker, as such, shall issue * * * any bill or note * * * ." The addition of the words "as such," to the term "individual banker," shows that the banking laws looked upon him who was a banker by virtue of them as having an artificial character separate from his natural one. He might issue nótes in his proper person, or in his general business, but in his capacity of individual banker, given him by law, he might not. And it is of use to note the fellowship in which the phrase is found in the

statutes. " No *banking association*, or individual banker as such, shall issue or put in circulation any bill or note of *said association* or individual banker, unless the same shall be made payable on demand and without interest : " (Chap. 363, Laws of 1840, § 4; see, too, §§ 8–12, same chap.; chap. 319, Laws of 1841, §§ 1, 2; chap. 202, Laws of 1840, §§ 1, 4, 5; chap. 218, Laws of 1843, § 3.) These terms thus contrasted go together through the banking acts. Such citations might be made from laws of many years. They show that this is a short phrase taken into legislative parlance, to present in few words the idea of one who has availed himself of the provisions of the banking acts of this State, to obtain the privileges thereby granted to any person who will singly comply with their prerequisites ; and that it is used to distinguished one person doing banking in the way those acts authorize from an association of persons joining together therefor. The first act for " free banking " uniformly speaks of a person, or of an association of persons, as able to become entitled to the privileges it holds out : (Chap. 260, Laws of 1838.) It is in after acts, used to set forth the same ideas, that the phrases " banking association" or " individual banker" both spring up together, the one used instead of an association of persons, and the other instead of a person ; and plainly showing that the one means that *quasi* corporate body which is the " association of persons " named in the act of 1838, and that the other means the " any person " or " such person " of that act : (See acts above cited of 1840, 1841, 1843.) An individual banker, then, is he who has availed himself of the banking statutes and has become empowered to do banking thereunder. This use of these phrases, with this contrasted and restricted meaning, appears almost yearly down to the year 1858, when the Legislature passed an act in which it is provided, that " it shall not be lawful for any bank, banking association or individual banker authorized to issue circulating notes by the laws of this State, established in any city or village where a chartered savings bank is located and transacting business, to put forth a sign as a

savings bank : " (Chap. 132, Laws of 1858.)   The next year (1859) it passed a law in relation to the banking department in which the same phrases, of banking association and individual banker, are again used : (Chap. 236, Laws of 1859.) Are we to suppose that the Legislature meant to charge this same form of words, so often recurring in the same fellow- ship, with one meaning in one set of statutes, and with another meaning in another statute on a kindred subject ? Not so.   The utterance of the Legislature in the act of 1858, to warn individual bankers against a deceptive use of a sav- ings bank sign, was made to the same class of persons, who were called out by the same utterance in the banking laws. It was the class who had taken privileges under the acts for free banking.   And it was a person of that class, who by the designation of individual banker, was forbidden under a penalty from putting forth a sign of a savings bank.   Why, when we reach the legislation of the year 1875, are we to think that the Legislature, by the same phrase, means a dif- ferent thing ?   We find it in the same society.   It is in com- pany with its former and constant fellow, the banking association.   No good reason is found for us or by us why it means, in this later legislative use, other than it meant then.   So too, the banking laws, when they speak of a bank, mean an institution authorized by statutory law to carry on a prescribed business as an espe- cial privilege.   But the common meaning of bank does not take in the idea of statutory authority, or a privilege to be got by the observance of prefatory conditions.   Shall we say that when the Legislature speaks of a bank in different statutes, it means in one a bank of one kind, and in another of another kind ?   If so, apply it to the penal section under consideration.   The prohibition is upon any bank, and any banking association, as well as any individual banker.   Did the Legislature give another meaning to these words in that section than it had always given to them before ?   If it did, then this defendant and his partner, Warner, could be sued as a bank ; for their place of business, and what they do at

it, is a bank, in the common understanding; and as they do banking and are associated therein, they are a banking association, in that understanding, and they permit upon their outside wall a sign of a savings bank. There is reason why the Legislature might have used other words, and so have widened the safeguard of the law; none why it is widened by the same words in a later statute.

It is said that the Legislature is to be presumed to have used the term in the act of 1875 in view of the condition of affairs then existing. That condition of affairs is said to be that by federal legislation most of the State banks, and all individual bankers under State laws, had gone out of business. That because there were left no individual bankers under those laws, the Legislature could not have meant to provide against their deceptive action. Grant that no individual bankers continued; the banking laws remained in force. There were banking associations under them, and could be at any time individual bankers. But it is not the fact that there was then no person doing business as an individual banker under the State banking laws. The reports of the superintendent of the banking department for the years 1874 and 1875 show the contrary. The Legislature had in mind, indeed, the federal legislation and its effect; for whereas in the act of 1858 (*supra*), it prohibited such banking associations and individual bankers *as were authorized to issue circulating notes by the laws of this State* from putting forth a savings bank sign; in the act of 1875, when there might be none who issued notes, it dropped the words in italics above, so as to meet the exact condition of affairs that congressional legislation tended to bring about. In the act of 1858, too, it had narrowed somewhat the prohibition, by applying it only to those associations and individual bankers established in any city or village where a chartered savings bank was located and transacting business. This limitation is left out of the act of 1875. The legislative mind was indeed directed to the subject, and while it changed the phraseology of the act in the particulars named,

it left the description of the prohibited persons, except in that, the same. It must have been plain to the law-maker in 1875, that an individual banker authorized to issue circulating notes by the laws of this State, could mean, in the act of 1858, no one else than one who had taken the privilege so to do by the free banking acts, and that when the phrase individual banker was used in the banking laws and in the act of 1858, such a privileged person only was in the intent of the statute It was known, too, to the law-maker that all through the statutes on banking, cotemporaneous in enactment with that act of 1858, ran the same term, and with the same and no other meaning. If, then, in 1875, the purpose was to extend the prohibition to any and every person engaged in banking, whether with statutory privileges or without them, would the law-maker of that year have kept on in the use of that phrase which had thus obtained a definite, settled statutory meaning ? Evidently the forty-ninth section of the act of 1875 was drafted with the act of 1858 before the penman. That section follows the language of the former act. Every word in the forty-ninth section is found in the act of 1858, in the same order. All that is changed in phraseology is by the omission of the clauses of which we have taken notice above. The inference is that no other change in substance was meant, and that the same words used were used with the intent that they should signify what they always had done in statutes. Indeed the proper phrase for a banker who exercises in his business no more than the rights and privileges common to all men, as distinguished from a bank or association or person who has taken advantage of the provisions of statutes, and by a compliance with the conditions of them has privileges not natural and common, is not individual banker, it is private banker. He is private in his business, inasmuch as he may conduct it as he pleases within law, is not subject to visitation or scrutiny by the State; while those who have started a banking business under an enabling statute are public, inasmuch as the public have

given them the right, and have the power to demand securities and have reports, and to make inquiry into the business and how it is conducted. The individual banker of the statutes is a public banker, but he is different from persons associated for the purpose of becoming public bankers. A partnership in banking, though not an individual, would be private. Such is the use of the word in *Curtis* v. *Leavitt* (15 N. Y., 9–79, 80): " Private individuals and associations" (meaning and private associations) " may  *  *  *  carry on  *  *  *  banking  *  *  *  of discount and deposit." And the following sayings show that learned judges recognize the same idea : " While the individual banker is in no sense a corporation, having none of the incidents or powers of a corporation, his business is by law put upon the same footing in the main as that of banking associations.  *  *  * In a sense, the bank, the banking business and banking capital of an individual banker is required to have  *  *  * a fixed *situs*, such as is nowhere given to personal property generally, or to individual business of any other nature ; *  *  *  the same  *  *  *  as that  *  *  *  given by law to a banking association  *  *  *  ." (Per DAVIES, J., *Miner* v. *Village of Fredonia*, 27 N. Y., 155–157.)  " That residence is  *  *  *  a *quasi* official or representative residence, the dwelling-place for legal and statutory purposes, not so much of the individual as the individual banker :" (*Id.*, 160.) "An individual banker, under the general banking laws, is no more, as such, a corporation either sole or aggregate than a merchant, or any other person. Any man may have a bank, and were it not for the restraining laws, might issue his own notes to circulate as money. The only substantial difference between them (*sic*) and individual bankers under the general banking laws, is, that the latter may issue such circulating notes : " (Per WELLES, J., *Matter of Metcalf* v. *Messenger*, 46 Barb., 326–328, 329.)  See McCullough's Coml. Dict'y (ed. 1840, 1 vol., pp. 70 and 125), where the distinction is made, that private banking companies are those not formed under

law.   To the same effect is 3 Chitty Com. Law, p.
590, tit. " *Bankers' Notes*." It may safely be said that
custom and the common understanding make that distinc-
tion; that those who do some part of a banking busi-
ness without special privilege from the State, are known
in the speech of men as private bankers; that the term
individual banker is a coinage of the statute law, as a term
of distinction of a class of its creatures.   Had the legisla-
ture meant that no citizen, doing what banking business is
permitted to all alike, should put forth a savings bank sign,
it would have expressed that meaning by saying private
banker.   When it said individual banker, it used a term
not formally defined, it is true, by any statute, but the
meaning of which had been made definite by repeated statu-
tory use, expressive of a specific signification.   As gathered
from the acts on the subject, it does not seem certain that
the Legislature meant to do more than to forbid one, who
had especial public authorization to do banking business, to
hold out his authority as also being one to take deposit of
savings.   It seems that it was meant that private citizens
should deal with each other in this matter, as in many
others, with such freedom, or with such caution, as each
chose to use; but that none having the right to hold him-
self out as one having authority to do one thing, to wit:
banking, should also put forth a sign of authority to do
another, to wit: take deposit of savings.   It had not
occurred that one would, as the defendant has done, put
forth a fictitious sign of each authority.   The law-maker
needs to take one step further to lay hold of such a wrong-
doer.   The courts cannot stretch a penal statute by con-
struction, so as to ensnare him.   That the defendant made
a false, and likely to be a deceptive annunciation, when he
put forth his two signs of "*L. Doty's Savings Bank*" and
"*The Farmers' Bank of Batavia*," is as plain as the signs
themselves.   There is no statute that we know of that inflicts
a penalty for showing the latter; there is none that inflicts
a penalty for showing the former, unless it be done by a

bank, a banking association, or an individual banker. These three terms have each a signification in statute law and in neither of them is included the defendant.

The judgment should be affirmed.

All concur, except EARL, J., not voting.

Judgment affirmed.