GILMAN H. PERKINS AND OTHERS, RESPONDENTS, *v.* GEORGE R. SMITH AND OTHERS, APPELLANTS.

*Usury — when the retention of a fixed amount under the name of exchange constitutes usury — exception in favor of banking associations, private and individual bankers, created by section 68 of chapter 409 of 1882 — meaning of the words "private" banker.*

In this action, brought by the surviving members of a firm conducting the business of banking, but not organized or doing business by virtue of any statute of this State, to foreclose a mortgage given by three of the defendants to secure the payment of all commercial paper discounted or held by the mortgagees, and bearing the names of the mortgagors, the defense of usury was interposed. The court found that before the mortgage was given it was agreed between the firm and the defendant Smith that the firm should lend him money upon his promissory notes, and that Smith should allow to the firm, in addition to interest on said loans, one-fourth of one per cent exchange upon the face of said notes. It appeared that the proceeds of the discount of the notes were delivered to the maker in the form of a credit on the books of the firm, and that the amount of such credit showed that the firm, on the discount of each note, retained the stipulated rate of exchange, in addition to interest at six per cent for the time each note had to run.

The court also found that the notes were made payable in the city of New York at the desire and request of the plaintiffs; that there was then no rate of exchange between Rochester and New York, and that Smith had no bank account in the latter city. It also found that by the one-fourth of one per cent exchange was intended and meant a charge for letter-writing and collecting the notes in the city of New York, and the profits which would arise to the plaintiffs from making such collections by reason of the facilities which the plaintiffs, as bankers, had for making such collections. and that said charge was a reasonable one.

*Held*, tnat but for the statute hereinafter referred to, the retention of the one-fourth per cent, under the said agreement by the plaintiffs' firm, would have been usurious and have rendered void the mortgage.

*Price* v. *Lyons' Bank* (33 N. Y., 55); *The Seneca County Bank* v. *Schermerhorn* (1 Den., 132), followed.

That the retention of the said one-fourth per cent did not render the loan usurious in this case for the reason that the plaintiffs' firm were "private" bankers, doing business within this State, within the meaning of that term as used in section 68 of the general banking act of 1882, chapter 409, which provides that "the purchase, discount or sale of a *bona fide* bill of exchange, note or other evidence of debt, payable at another place than the place of such purchase, discount or sale, at not more than the current rate of exchange for sight drafts, *or a reasonable charge for collecting the same, in addition to the interest*, shall not be considered as taking or receiving a greater rate of interest than six per centum per annum."

APPEAL from a judgment in favor of the plaintiffs, entered upon a decision of the court at the Monroe Equity Term.

*T. E. Bramble and Theodore Bacon*, for the appellants.

*Martin W. Cooke*, for the respondents.

SMITH, P. J.:

Action by the surviving members of the firm of Erickson, Jennings & Co. to foreclose a mortgage given to the firm by three of the defendants, dated 13th February, 1884. The mortgage was given as a continuing security for the term of ten years, to the amount of $10,000, for the payment of all commercial paper discounted or held by the mortgagees and bearing the names of the mortgagors. The members of the firm, as such, were private bankers, that is to say, they were engaged as partners in the business of banking, but they were not organized or doing business under or by virtue of any statute of this State. The foreclosure was sought by reason of the non-payment of two promissory notes, one for $2,500, dated 7th February, 1884, and the other for $1,500, dated 11th February, 1884, each payable at the National Park Bank, in New York city, at three months, made by the defendant George R. Smith, and discounted by the firm at their banking office in the city of Rochester.

The defense is usury. The trial court found that shortly before the first note was given it was agreed between the firm and the

defendant Smith that the firm should lend him money upon his promissory notes secured by mortgage, and that it was a part of said ageeement that Smith should allow to the firm, in addition to interest on said loans, one-fourth of one per cent exchange upon the face of said notes. The court did not find that anything was paid to the firm or retained by them, by way of exchange, or in addition to the interest, but the uncontradicted evidence in the case is that the proceeds of the discount of each note were delivered to the maker in the form of a credit on the books of the firm, and that the amount of such credit, on the discounting of the note for $2,500, at its date, was the sum of $2,454.79, and the amount of such credit on the discounting of the note for $1,500, at its date, was the sum of $1,472.87. The court did find, however, that at the time of making such discounts, respectively, the plaintiffs intended to take, in addition to interest at the rate of six per cent per annum, one-fourth of one per cent, upon the face of said notes, respectively, calling the same exchange. He also found that said notes were made payable in New York at the desire and request of the plaintiffs; that there was then no rate of exchange between Rochester and New York, in the sense of a premium, for the greater value of funds in one place over the value of funds in the other; that Smith had no bank account in New York, and the plaintiffs knew that fact; and that by the one-fourth of one per cent exchange was intended and meant a charge for letter-writing and collecting the notes in the city of New York, and the profits which would arise to the plaintiffs from making such collection by reason of the facilities which the plaintiffs, as bankers, had for making such collections, and that said charge was a reasonable one.

Upon these facts the question of usury is to be determined. We will first consider the question independently of the statutes which provide that a reasonable charge made by any of the banking associations or bankers therein specified, for collecting a note discounted by such association or banker, payable at another place than the place of such discount, in addition to the interest, shall not be considered as taking a usurious rate of interest. (Laws 1870, chap. 163, and Laws 1880, chap. 567, repealed by Laws 1882, chap. 402, § 1, subs. 29, 37; Laws 1882, chap. 409, § 68.)

The amount of the credits in the bank-book shows that the

plaintiffs, on the discount of each note, retained the stipulated rate of exchange in addition to interest at six per cent for the time each note had to run. It has long been held in this State that it is not usurious or unlawful to take the interest out in advance, without regard to the value of rebate or discount. (*Marvine* v. *Hymers*, 2 Kern., 223, and cases there referred to by DENIO, J.) The question of usury, in this case, depends, therefore, on the effect of taking out the so-called exchange, in addition to the lawful interest in advance.

It has also been held in this State that there is no usury in the discount of a note by a banker in the interior, made payable in the city of New York, not for the accommodation of the maker, nor upon the expectation that he will have any funds there at the time of its maturity, otherwise than by the purchase of them at a premium, but with the purpose in both parties to enable the lender to realize a profit from a difference of exchange existing in fact, and expected to continue. (*Oliver Lee & Co.'s Bank* v. *Walbridge*, 19 N. Y., 134.) That decision proceeded upon the ground that there was no contract to pay more than the legal rate of interest, and no more than the legal rate taken, and that the hope or expectation of realizing a profit in the difference of exchange was uncertain and speculative. That there was nothing in the law of the contract which secured the contemplated result, because the rule of damages, in an action upon the note, allowed no indemnity for the loss of exchange, and that the law recognizes no difference of value in money at different localities within this State.

If, therefore, the plaintiffs in this case had done nothing more than to stipulate for and receive the interest in advance, and to receive the defendants' note, made payable in New York at their request, the transaction, within the decisions, would have been free from usury. But they went further by stipulating for and taking the so-called exchange, in addition to the lawful interest, at the time of the discount. The like feature existed in the case of *Price* v. *Lyons' Bank* (33 N. Y., 55), and it was held to distinguish that case from the case of *Oliver Lee & Co.'s Bank* (*supra*) and to constitute usury. To the same effect is the case of *The Seneca County Bank* v. *Schemerhorn* (1 Den., 132), where the bank on the renewal of a debt took, in addition to lawful interest, drafts on New York

and Albany to the amount of the debt, which were worth at the time three-fourths of one per cent premium under an arrangement by which the bank secured to itself the premium. The transaction was held usurious. We are not able to distinguish this case in principle from the two last cited.

The finding that the charge was a reasonable one is immaterial. Reasonable in amount, undoubtedly, if the debtor had needed the service, but he did not. He had no occasion to make his note payable in New York. It was made payable there at the request of the lenders, and for the sole purpose, so far as the case discloses, of enabling them to realize a profit in addition to the lawful interest. The finding is that the charge was not simply a reasonable remuneration for letter-writing and collecting, but it also included a profit which would arise to the plaintiffs from making the collection by reason of the facilities which they, as bankers, had for making such collections. We are of the opinion that but for the statutes already referred to the transaction would be usurious for the reasons above stated.

The only question in respect to those statutes is whether the plaintiffs, being private bankers, are within their provisions. The statute of 1870, which was the first in date, applied only to "banking associations" organized under the act of 1838, and the acts amendatory thereof, and its intent was declared to be to place such banking associations on an equality with national banks. (Laws 1870, chap. 163.) The statute of 1880 included, also, "every private or individual banker or bankers doing business in this State." (Laws 1880, chap. 567.) Those statutes were repealed in 1882 (Laws 1882, chap. 402), and the only provisions now in force on the subject are found in the general bank statute of 1882. (Laws 1882, chap. 409, §§ 68, 69.)

Section 68 applies in terms to "every banking association organized and doing business under and by virtue of the laws of this State, and every private and individual banker or bankers doing business in this State." And it provides, among other things, that "the purchase, discount or sale of a *bona fide* bill of exchange, note or other evidence of debt, payable at another place than the place of such purchase, discount or sale, at not more than the current rate of exchange for sight drafts, or a reasonable charge for collecting

the same, in addition to the interest, shall not be considered as taking or receiving a greater rate of interest than six per centum per annum." So·that if the plaintiffs are within the statute, the transaction, as found by the trial court, is not usurious.

Do the words "private" and "individual," as used in the section, refer to two distinct classes of bankers, to wit, individual bankers, who are subject to the inspection and supervision of the superintendent of the banking department (sec. 11, chap. 409 of 1882), and private bankers who are not so subject? Or is the word "private" simply used in connection with the word "individual" to designate one and the same class as distinguished from banking associations? The earliest use of the term "private," as applied to bankers, is in the act of 1880, above referred to, and there the expression is, as we have seen, "every banking association * * * and every private *or* individual banker or bankers, etc." That act was passed in June, 1880. In February of that year the Court of Appeals had held that the term "individual banker," in the provision of the act of 1875, relating to savings banks (Laws 1875, chap. 371, § 49), which declares "it shall not be lawful for any bank, banking association or individual banker to advertise or put forth a sign as a savings bank," applies only to one who has availed himself of the banking statutes of this State, and has become empowered to do ˙banking thereunder; it does not apply to a private banker who exercises in his business no more than the rights and privileges common to all. And the opinion was then expressed that the proper phrase to designate a banker doing business without having acquired the privileges conferred by the provisions of the statute is "private banker," not "individual banker." It is not unreasonable to suppose that in passing the act of the following June the legislature had that decision in view. That act was an amendment of the act of 1870, which, as has been said, applied to banking associations only. By the amendment it was made to include every "private or individual banker." It is hardly to be supposed that by the use of both terms, in the light of the decision referred to, the legislature intended to refer merely to that class of bankers who had been designated in previous statutes as "individual · bankers" to the exclusion of private bankers, as pointed out by the Court of Appeals. The sixty-eighth section of the act of 1882 dif-

fers from the act of 1880, by substituting "and" for "or," so that it reads, "every banking association * * * and every private *and* individual banker or bankers * * * are hereby authorized," etc. Farther on it provides that a person paying excessive interest may recover twice the amount thus paid from the "association, or private or individual banker," etc. And section 69 declares that the true intent of the last preceding section is to place and continue "the private and individual bankers and banking associations organized and doing business as aforesaid on an equality, in the particulars in said section referred to, with national banks." The words "organized and doing business as aforesaid" do not limit, we conceive, the provision to "organized" associations or bankers, but they are to be applied distributively. Thus construed, the provision embraces banking associations "organized," and private bankers and individual bankers "doing business" in this State, as does the first clause of section 68.

The statute, which was construed by the Court of Appeals in *People* v. *Doty* (80 N. Y., 225), was repealed in 1882. (Laws 1882, chap. 402, § 1, sub. 33.) In 1885, the legislature amended section 311 of chapter 409 of the Laws of 1882, by providing that "no person or persons engaged in the business of banking in this State, not subject to the supervision of the superintendent of the banking department, and not required to report to him by the provisions of this act, shall make use of any office sign," etc., having thereon any artificial or corporate name or other words indicating that such place is a bank, etc. (Laws 1885, chap. 329.) The counsel for the appellants refers us to this statute, upon the question of the meaning of the word "private" as used in the statutes referred to. We do not see that it militates against the views already expressed. It certainly recognizes the existence of a class of bankers within the State, who are not subject to the supervision of the banking department, and they can be no other than the "private bankers" mentioned in other statutes. By the act last referred to they are subjected to certain specified prohibitions and disabilities, but they are not deprived of the privileges conferred by section 68.

Chapter 409 of the Laws of 1882 is, to a certain extent, a codification of the laws of the State in relation to banks. It speaks, in numerous instances, of incorporated banks, banking associations

and individual bankers, and makes them subject to the superintendent of the banking department. It also speaks of private bankers and does not subject them to the superintendent. In one instance, and in one only, so far as I have observed, does it clearly use the terms " private " and " individual " as synonymous, and that is in the ninety-ninth section. That section provides that it shall be lawful for any number of incorporated banks, banking associations and *private* bankers, by agreement, to associate together for raising a joint fund to be placed in the hands of their common agent for the redemption of their circulating notes in the city of New York or Albany, and also the circulating notes of other incorporated banks, banking associations and *individual* bankers, etc. It is clear from the context that individual bankers are intended by the word *private*, in this instance, but that circumstance does not indicate satisfactorily that the word is used in the same sense in section 68. The use of the word " private," in that section, as well as in the previous act of 1880, is redundant and purposeless, unless the class of bankers known as private were intended to be included. The statute is remedial. It is designed to put those engaged in the business of banking within the State on an equality with national banks, so far as the provisions of law applicable to them, respecting usury, are concerned. It is, therefore, to be fairly, if not liberally, construed.

On the whole, we are of the opinion that the plaintiffs are within the statute referred to, and on that ground we hold that the defense was not made out, and that the judgment should be affirmed, with costs.

BARKER, HAIGHT and BRADLEY, JJ.. concurred.

Judgment affirmed, with costs.