LOUIS GOLD, Respondent, *v.* LOUIS ROSS, Appellant.

Second Department, March 4, 1921.

Evidence — contracts — action on promissory note — defense — agreement by plaintiff with third person to execute release to defendant — parol evidence not admissible to explain meaning of " as individuals " in agreement — agreement to execute release though not signed by defendant was good defense to action on note.

The parties herein organized a speculative corporation which never obtained any actual business and the expenses of which were borne by the plaintiff. Subsequently they organized another speculative corporation which had the same office and the same employees as the first and the expenses of which were borne by the plaintiff. Thereafter a division of expenses was made and the defendant gave to the plaintiff his note for one-half thereof which is the basis of the present action. Thereafter a third person came into the second corporation agreeing to make certain advances upon the guaranty of the defendant and other stockholders. The plaintiff subsequently sold his interest to said third person for a stipulated sum under a contract which provided among other things that " Mutual releases are to be exchanged between said Louis Gold [plaintiff] and * * * Louis Ross [defendant] * * * as *individuals*, and as stockholders and directors of the North River Ship & Engine Corp. [second corporation] and as co-guarantors to Lester Cohn [said third person] under the contract heretofore mentioned dated May 9th, 1919." Said release was never executed, but the defendant interposed the agree-

ment to execute the release as a defense in this action though he did not sign said agreement.

*Held*, that the transactions concerning the two corporations and individual and corporate payments were united and intermingled and the adjustment made at the time of the sale of plaintiff's interests to said third person comprehended the whole subject-matter.

It was error to permit parol evidence to be introduced of prior conversations for the purpose of explaining the meaning of the words " as individuals " in said agreement for release, for said expression was not ambiguous.

Though defendant did not sign said agreement for the release he was named as one of the parties to whom individual releases should be delivered and, on all the evidence, he is entitled to the equitable relief set up in his amended answer, and said agreement to release constitutes a defense to this action.

RICH and KELLY, JJ., dissent, with opinion.

APPEAL by the defendant, Louis Ross, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 27th day of February, 1920, on the decision of the court rendered after a trial at the Kings Special Term.

The action was for the amount of a promissory note for $1,773.10, dated December 3, 1918, also for recovery of $100, lent defendant on May 1, 1919. The amended answer, among other defenses, set up a release made in connection with the purchase of plaintiff's stock in the North River Ship and Engine Corporation, by one Lester Cohn, whereby Cohn was to pay plaintiff $17,000, and for which plaintiff, besides assigning his stock, agreed also on the exchange of mutual releases, between him and defendant, with others, as individuals, and as stockholders and directors of the North River Ship and Engine Corporation, and as coguarantors to Lester Cohn, under a prior contract.

*Henry Greenberg*, for the appellant.

*Herman S. Bachrach*, for the respondent.

PUTNAM, J. :

The main question here is the relation between two corporations, in which plaintiff and defendant were interested. Both of them were speculative enterprises. The first was the Gold-Ross Company, which never obtained any actual business. It had been intended as a building corporation.

Plaintiff alone bore its expenses, being rent of an office in the Woolworth Building, New York city, also advances for salaries, stationery and like outlays. Having so far been unsuccessful, plaintiff and defendant were attracted by the prospects of the business of shipbuilding and ship repairing. So in July or August, 1918, they incorporated another speculative company, called the North River Ship and Engine Corporation. Its office was in the same room in the Woolworth Building where the Gold-Ross Company had been, and it had the same employees. It had no financial basis beyond advances by plaintiff, who continued to pay its expenses and salaries. Neither company then kept books of account. In December, 1918, when these outlays for both companies were about $3,500, there was a division evidenced by defendant's note for $1,773.10 as his half of the expenses that plaintiff had advanced. This is the note set up in the first cause of action.

About May 9, 1919, Mr. Cohn came into the concern, agreeing to put in $30,000, upon the guaranties of defendant and other stockholders. Afterwards, on July 31, 1919, plaintiff, whose total advances had been $15,000, sold out to Cohn all his interest for $17,000 cash, with the provision for the exchange of releases, as set up in the answer. This summary sufficiently shows how united and intermingled had been individual and corporate payments.

On this testimony we cannot find that these two speculative ventures had been wholly disconnected. Certainly a large part of this note represented office expenses and other overhead charges of the North River Ship and Engine Corporation, the control of which Mr. Cohn purchased.

In such a mixed-up affair it would have been a reproach to business men not to make this adjustment comprehend this whole subject-matter. Evidently they so intended by this provision: " Mutual releases are to be exchanged between said Louis Gold and * * * Louis Ross, * * * as *individuals*, and as stockholders and directors of the North River Ship & Engine Corp. and as co-guarantors to Lester Cohn under the contract heretofore mentioned dated May 9th, 1919."

Under the fallacious claim that the words " as individuals " are ambiguous, parol evidence was let in of prior conversations

— all of which had been merged in the contract. There is nothing double or dubious in the expression " as individuals." It is no more, but decidedly less, ambiguous than the term " incompatibility " in *Gray* v. *Shepard* (147 N. Y. 177).

Respondent would justify this ruling by three decisions, two of which (*Grannis* v. *Stevens*, 216 N. Y. 583, and *Higgins* v. *Ridgway*, 153 id. 130) merely sanction the settled rule, that proof may be given that a note or contract had been conditionally delivered.

The third case (*Sabin* v. *Kendrick*, 58 App. Div. 108) recognizes that conversations *after* a contract may explain how the parties regard or interpret its terms. The ruling here was clearly against *House* v. *Walch* (144 N. Y. 418) and *Lossing* v. *Cushman* (195 id. 386). Its effect was not to clear up or remove an ambiguity, but rather " to import into the contract something that the parties did not put there," and actually to nullify what they did put there. Going beyond explaining any obscure technical term, or other ambiguity, this improper testimony varies and contradicts plain and simple words chosen by the parties. (*Murdock* v. *Gould*, 193 N. Y. 369, 377.) Thus Folger, J., said: "An individual is one entity, one distinct being, a single one, and when spoken of the human kind means one man or one woman." (*People* v. *Doty*, 80 N. Y. 225, 228.)

The fact that this defendant had not signed this agreement, which was one between plaintiff and Cohn, did not change the rule. Defendant was named as one of the parties to whom individual releases should be delivered, and the evidence, in my view, justified the equitable relief set up in the amended answer, which required judgment for this defendant.

I advise, therefore, that the judgment and the findings of fact numbered 4th, 6th, 7th, 8th, 9th, 10th, 11th, 13th and 14th be reversed, and complaint dismissed, with costs to appellant.

Jenks, P. J., and Mills, J., concur; Rich, J., reads for affirmance, with whom Kelly, J., concurs.

Rich, J. (dissenting):

I dissent. Plaintiff advanced moneys to the Gold-Ross Company from time to time upon the understanding and agreement

with defendant that the latter should pay to plaintiff one-half of the moneys advanced. The corporation was unsuccessful. It had no business, and on the 3d day of December, 1918, there was due and owing to plaintiff from defendant on account of his advances $1,773.10, for which defendant executed and delivered to plaintiff the note in suit. In addition to this note, plaintiff loaned to defendant on the 1st day of May, 1919, $100.

In July, 1918, these parties organized another corporation known as the North River Ship and Engine Corporation.

This company, like the former, was organized for speculative purposes, but there was no connection between the two corporations. Plaintiff likewise advanced money to the Ship and Engine Corporation for rent, office expenses and salaries. In May, 1919, one Cohn undertook to finance the North River Company, upon the parties to this action together with the other stockholders of the company guaranteeing the repayment to him of the moneys advanced. This contract contained a statement of the obligations of the company at the time, which included the amount of plaintiff's advances to it as $5,000.

The contract also contained among its provisions the following: " It is further agreed that Mr. Louis Gold is to be released from all obligations from the contract of May 9th, 1919, heretofore mentioned. Mutual releases are to be exchanged between said Louis Gold and Lester Cohn, Louis Ross, Charles W. Held and John Hartley, as individuals, and as stockholders and directors of the North River Ship & Engine Corp. and as co-guarantors to Lester Cohn under the contract heretofore mentioned dated May 9th, 1919." Upon the trial plaintiff was permitted to give evidence tending to show that at the time of the purchase of defendant's interest in the North River Ship and Engine Corporation, and the execution of the contract in evidence, there was no mention made of the individual liability of the defendant to plaintiff growing out of the advancements to the first company, on the theory that the contract was ambiguous and that oral evidence was admissible.

The object of the agreement which was executed in connection with the sale of the North River Ship and Engine Cor-

Second Department, March, 1921.          [Vol. 195.

poration was to release the parties from the contract made with Cohn at the time of his entrance into the company, and it so recites.   It was a part of the transaction for the purchase of the stock of the company.   It seems to me perfectly clear that only claims arising out of the transactions in connection with the Ship and Engine Corporation were intended to be covered.   It was established that the claim in suit arose out of an entirely different transaction.   The evidence in question did not vary the terms of the instrument.   It merely explained to what those terms were intended to apply and as to what was actually the subject-matter of the agreement.   The word " individuals " is qualified by the succeeding words " and as stockholders," etc., and justifies the admission of the evidence in question.   The object of the agreement was to settle the affairs of the parties with the Ship and Engine Corporation, and under the circumstances the word " individuals " introduced an ambiguity which it was proper to explain by parol evidence.

I must, therefore, vote for affirmance, with costs.

Kelly, J., concurs.

Judgment reversed, and findings of fact numbered 4th, 6th, 7th, 8th, 9th, 10th, 11th, 13th and 14th reversed, and complaint dismissed, with costs to appellant.   Settle order on notice.