GEORGE WHITNEY, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6514–6525, 6547. Promulgated May 14, 1947.

---

[1] Proceedings of the following petitioners are consolidated herewith: Henry C. Alexander (Docket 6515) ; Arthur M. Anderson and Alice M. Anderson, Husband and Wife (Docket 6516) ; I. C. Raymond Atkin and Winnifred Atkin, Husband and Wife (Docket 6517) ; H. P. Davison (Docket 6518) ; Charles D. Dickey and Catherine C. Dickey, Husband and Wife (Docket 6519) ; Thomas S. Lamont (Docket 6520) ; Thomas W. Lamont (Docket 6521) ; R. C. Leffingwell and Lucy H. Leffingwell, Husband and Wife (Docket 6522) ; William A. Mitchell (Docket 6523) ; Estate of J. P. Morgan, Deceased, Junius S. Morgan, Henry S. Morgan and J. P. Morgan & Co. Incorporated, Executors (Docket 6524) ; Junius S. Morgan and Louise C. Morgan, Husband and Wife (Docket 6525) ; Estate of Francis D. Bartow, Deceased, J. P. Morgan & Co. Incorporated, Executor, and Sabina R. Bartow, Wife of said Francis D. Bartow (Docket 6547).

*Montgomery B. Angell, Esq.*, and *George Craven, Esq.*, for the petitioners.

*Conway N. Kitchen, Esq.*, for the respondent.

1026

1028

1030

## OPINION.

LEECH, *Judge*: The primary issue, common to all petitioners, is whether the respondent properly denied to them any losses in the taxable year 1940 resulting from the sale of certain assets of the co-partnership of J. P. Morgan & Co. by virtue of the applicability of the provisions of section 24 (b) (1) (B) of the Internal Revenue Code.[3]

---

[3] SEC. 24. ITEMS NOT DEDUCTIBLE.

(b) LOSSES FROM SALES OR EXCHANGES OF PROPERTY.—

(1) LOSSES DISALLOWED.—In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

\* \* \* \* \* \* \*

(B) Except in the case of distributions in liquidation, between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual.

Petitioners concede that together they owned "more than 50 per centum * * * of the outstanding stock" of the trust company within the purview of section 24 (b) (2) (A) and (B), as added by section 301 of the Revenue Act of 1937.

On March 30, 1940, by an instrument entitled "Bill of Sale and Agreement," assets owned by J. P. Morgan & Co., a New York partnership, and having a then fair market value of $597,098,131.87, were transferred to J. P. Morgan & Co., Inc., a trust company organized under the Banking Laws of the State of New York. In consideration therefor, the trust company assumed all the liabilities of the partnership, totaling $584,832,737.78, and paid the difference of $12,265,394.09 by check to the order of J. P. Morgan & Co. The amounts of gains and losses sustained on the transfer of this property under the bill of sale and agreement are not in dispute.

Thus the issue is narrowed to the proper construction of the language, "Except in the case of distribution in liquidation, between an individual and a corporation," contained in that section. We pass consideration of the question whether "distributions in liquidation" is applicable to the facts here, and consider only whether the transfer of the assets pursuant to the bill of sale and agreement constituted a sale "between an individual and a corporation" within the meaning of the section.

In contending that the transaction of March 30, 1940, was a sale "between an individual and a corporation" the respondent relies heavily on the instrument under which the transfer was made. He directs attention to the fact that the partners of J. P. Morgan & Co. were individually named as parties and all 13 executed the agreement as individuals. These are isolated facts. Considered in the light of the entire instrument, we do not think they warrant the significance the respondent would have us place upon them. It is to be noted that the bill of sale and agreement recites that it is between J. P. Morgan & Co., a partnership, the partners of the firm individually, and J. P. Morgan & Co. Inc. In the preamble it is stated: "Whereas, the Firm * * * now desires to sell to the Bank its banking business * * *." It then provides:

The Firm and each of the Partners, respectively, hereby sells, assigns, transfers and delivers to the Bank, all of its and his respective right, title and interest in and to all of the * * * assets, rights and properties of the Firm.

It then recites: "The sum of $12,265,394.09 payable by the Bank to the Firm upon the execution of this Agreement, the receipt whereof is hereby acknowledged by the Firm. * * *"

The agreement was executed by J. P. Morgan & Co., each of the 13 individual partners, and the trust company. The agreement contains a personal covenant of each partner not to engage in any banking or

other business under the name of J. P. Morgan & Co., or a similar name. This provision was inserted for the protection of the purchaser. Its effectiveness required that the individual partners be named as separate parties to the agreement and to so execute it.

J. P. Morgan & Co. admittedly was a valid New York partnership. Under the law of that state, which is here controlling, not the individual partners, but the partnership itself owned its assets. The interests of the several partners in the partnership were merely the respective shares of the profits and surplus, less its obligations. New York Partnership Law, sec. 52. Cf. *Robert E. Ford*, 6 T. C. 499;[4] *Allan S. Lehman*, 7 T. C. 1088; *Blodgett* v. *Silberman*, 277 U. S. 1; *Case* v. *Beauregard*, 99 U. S. 119. However, a more difficult aspect of the problem remains to be considered. Does the term "individual" as used in section 24 (b) (1) (B) include a partnership?

Words used in a statute are to be taken in their usual everyday meaning, and this is particularly true of revenue statutes. *Welch* v. *Helvering*, 290 U. S. 111; *Lang* v. *Commissioner*, 289 U. S. 109; *Old Colony R. R. Co.* v. *Commissioner*, 284 U. S. 552, 560. Black's Law Dictionary defines the term "individual" as follows:

As a noun, this term denotes a single person as distinguished from a group or class, and also, very commonly, a private or natural person as distinguished from a partnership, corporation, or association; but it is said this restrictive signification is not necessarily inherent in the word, and that it may, in proper cases, include artificial persons. See *Bank of U. S.* v. *State*, 12 Smedes & M. (Miss.) 460; *State* v. *Bell Telephone Co.*, 36 Ohio St. 310; 38 Am. Rep. 583; *Pennsylvania R. Co.* v. *Canal Com'rs*, 21 Pa. 20; *In re New Era Novelty Co.* (D. C.), 241 Fed. 298, 299.

See also *People* v. *Doty*, 80 N. Y. 225, 228. We find nothing in the context of the section to indicate the term "individual" was used in other than in its commonly accepted meaning. The specific provision with which we are here concerned first appeared in identical language as section 24 (a) (6) of the Revenue Act of 1934.[5] The hearings before the Ways and Means Committee considering a bill to revise the revenue laws in 1934 clearly evidence that the purpose of the section was to close "loopholes" which permitted the avoidance of taxes. Ex-

---

[4] Respondent acquiesces, C. B. 1946–2, p. 2.
[5] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

* * * * * * *

(6) Loss from sales or exchanges of property, directly or indirectly, (A) between members of a family, or (B) except in the case of distributions in liquidation, between an individual and a corporation in which such individual owns, directly or indirectly, more than 50 per centum in value of the outstanding stock. For the purpose of this paragraph (C) an individual shall be considered as owning the stock owned, directly or indirectly, by his family; and (D) the family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants.

[See S. R. 558, 73d Cong., 2d sess., p. 27.]

perience had shown that, by means of so-called sales between members of families and between individuals and corporations they controlled, large losses had been claimed as deductions against income. The difficulty of determining the *bona fides* of such transactions led to the conclusion that all losses resulting from sales coming within the prescribed categories should be denied recognition for income tax purposes. There is no suggestion that partnership losses were considered in connection with this provision. That they were not intended to be affected by the provision is indicated by the fact that the subject of partnership losses· was separately treated.[6] See also *Commissioner* v. *Lamont*, 156 Fed. (2d) 800.

The Revenue Act of 1937, in order to further prevent evasion and avoidance of taxes, materially amended section 24 (b). Several new

[6] In the preliminary report of the subcommittee of the Ways and Means Committee appointed *inter alia* to investigate tax avoidance, of which Congressman Hill was chairman, it is stated in paragraph (9):

"Under the present law (sec. 182 Revenue Act of·1932) as interpreted by the Treasury, a member of a partnership is entitled to reduce his ordinary income by a net loss of the partnership of which he is a member, according to his distributive share in the partnership * * *. Your subcommittee is of the opinion that partners should not be permitted to offset against their ordinary income losses sustained by the partnership. * * *"

In response to this suggestion the Treasury replied as follows:

"* * * The Treasury Department believes that this change is of doubtful wisdom. A partnership for other legal purposes, as well as for the purposes of the tax law, is not regarded as a legal entity. * * * The treatment of partnership income and deductions should be consistent. So long as the partner must report all partnership income he should be permitted to deduct the corresponding partnership losses. The losses now deducted are not fictitious or imaginary and do not represent either evasion or avoidance of the income tax. In the opinion of the Department, the proposal would probably operate with extreme injustice upon the many small businesses scattered over the country, which typically are unincorporated."

Later at the hearings of the Ways and Means Committee, Chairman Hill made the following. statement:

"* * * A partnership in that strict sense is not a legal entity, but it is as a matter of fact a business set-up, separate and apart from each individual associated in the partnership.

"In other words, the partnership business is separate from the individual business of the partners. It seems to me that it could very properly be considered for purposes of taxation a legal entity although it is not, as I concede, under the present set-up.

"It is upon that theory that I understand, of course, the Treasury has said, if you are going to apportion net gains to the partners for taxation purposes, then you should apportion net losses to the partners as offsets against the income that they might have.

"But I think it is not at all inconsistent with the idea that we carry out in connection with corporations, to say that you must absorb your losses wihin that particular entity. Then if you have any net gains, we will tax them. That is the theory on which the subcommittee proceeded."

In the Report of the Ways and Means Committee (H. R. 704, 73d Cong., 2d sess.; C. B. 1939–1, Part 2, p. 567) adopting the report of the·subcommittee it is stated:

"* * * Under the bill, the partnership will be permitted to deduct losses on the sale of capital assets only to the extent of gains from such sales (section 117 (d)). Thus the partnership can have no capital net loss and therefore the partner can have no deduction on account of any capital loss of the partnership. In this way the main source of the tax avoidance by banking and security partnerships in the past can be eliminated."

Similar language appears in the Report of the Senate Committee on Finance. (S. R. No. 558, 73d Cong., 2d sess.; C. B. 1939–1, Part 2, p. 600.)

"Section 186 [Revenue Act of 1932] Capital Gains and Losses: This section is omitted on account of the change in policy in taxing capital gains and losses." (C. B. 1939–1, Part 2, p. 579.)

provisions denying losses from transactions between certain particularized groups were added.[7]  Here again partnerships were not specifically mentioned.  But partnerships, although not regarded as entities for taxpaying purposes, are considered as such for computing their income.  And Congress has treated partnerships as it has corporations generally, personal holding companies, foreign personal holding companies, and fiduciaries, specifically and with particularity in the revenue acts.[8]  Yet in section 24 (b) (1), although it expressly includes corporations, personal holding companies, and foreign personal holding companies, it does not mention partnerships.  The respondent in effect argues that, in broadening the rule for determining stock ownership in a corporation by section 301 of the Revenue Act of 1937,[9] Congress evidenced an intention to broaden the term "individual" to include partnerships.  We do not agree.  Those provisions, as clearly revealed by their contents, had merely to do with determining stock ownership for the purpose of passing on the question of 50 per cent ownership, which is only one of the determinants as to the applicability of section 24 (b).  We do not find in these amendments any evidence of an intent to embrace a partnership within the term "individual."  To so hold, we think, would enlarge the statute by judicial construction.  Since section 24 (b) is expressly restrictive in character, we should not arbitrarily extend the boundary of the prohibited classes to include those not specifically mentioned or within the natural and ordinary meaning of the terms used.  With respect to the securities listed in the bill of sale and agreement, the respondent erred in refusing to recognize the losses suffered.

As to the losses claimed on the transfer of the "contributed securities" having a current value of $1,472,658, we think a different conclusion must be reached.  While it was primarily intended to include

---

[7] See sec. 24 (b) (1) (B) and (C), as added by Revenue Act of 1937.

[8] Supplement F—Partnerships, sec. 181–190 ; Supplement E—Estates & Trusts, sec. 161–172 ; Supplement P—Foreign Personal Holding Companies, sec. 331–340 ; ch. 2, subch. A, Personal Holding Companies, sec. 500–511.

[9] SEC. 301. DISALLOWED DEDUCTIONS.

(a) Section 24 (A) of the Revenue Act of 1936 is amended to read as follows :

*        *        *        *        *        *        *

"b) LOSSES FROM SALES OR EXCHANGES OF PROPERTY.—

*        *        *        *        *        *        *

"(2) STOCK OWNERSHIP, FAMILY, AND PARTNERSHIP RULE.—For the purposes of determining, in applying paragraph (1), the ownership of stock—

"(A) Stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust, shall be considered as being owned proportionately by or for its shareholders, partners, or beneficiaries ;

*        *        *        *        *        *        *

"(C) An individual owning (otherwise than by the application of subparagraph (B)) any stock in a corporation shall be considered as owning the stock owned, directly or indirectly, by or for his partner ;

*        *        *        *        *        *        *

such securities in the bill of sale and agreement, the plan was abandoned because of the belief that the trust company was prohibited by law from purchasing such securities.

The respondent argues that the transfer of the defaulted securities constituted a "gift." Whether it may be correctly so characterized here need not be decided, since, if it was not a gift, the result would be the same. It would then constitute a contribution to the capital of the trust company by the petitioner stockholders and therefore a part of the cost to them of their stock in that company. Since the contributed securities increased the capital value of the trust company, the value of the stock of the 13 partners, as well as that of all other stockholders, was proportionately enhanced.

In transferring the defaulted securities the partnership was not engaging in any function of the partnership. It was merely acting as the agent of the individual partners. That the transaction was so regarded seems implicit in the use of the phrase "on behalf of our partners," in the letter making the offer. The transfer was made through the partnership because the character of the securities made it undesirable, if not impractical, to attempt a proportional division in kind among the respective partners. In invoking the principle that substance prevails over form in matters of taxation (*United States* v. *Phellis*, 257 U. S. 156, 168), the partnership in effect made a cash distribution in the amount of $55,073.01 and a distribution in kind of the defaulted securities to its 13 individual partners. Following this, the partners are to be regarded as having individually made a contribution to the capital surplus of the trust company. Each partner's proportionate share of the cash and defaulted securities is to be considered as increasing the cost of his shares in the capital stock of the trust company. Since the securities were contributed in kind to the trust company, there was no sale or exchange resulting in a closed transaction giving rise to gain or loss. *Interstate Transit Lines* v. *Commissioner*, 130 Fed. (2d) 136; *In re Park's Estate*, 58 Fed. (2d) 965; certiorari denied, 287 U. S. 645; *Menihan* v. *Commissioner*, 79 Fed. (2d) 304; certiorari denied, 296 U. S. 651. We affirm the respondent's disallowance of any deduction on account of the transaction under which cash and defaulted securities were contributed to the trust company.

In view of our determinations, we think it unnecessary to pass upon the further contention of the petitioners that, if the term "individual" includes partnership, then a liquidation of the partnership was effected within the meaning of the excepting clause contained in section 24 (b) (1) (B). Nor is it necessary at this time to consider the status of the "Special Reserve" of $856,796.42. As a result, the transaction respecting the French partnership of Morgan & Cie. is not involved.

However, we have found the facts in connection with the special reserve fund and Morgan & Cie. in the event an appellate court disagrees with our determination.

The remaining two issues are germane only to Docket No. 6524, in which the estate of J. P. Morgan, deceased, is petitioner. One of such issues involves the question whether there should be included in decedent's gross income for the taxable year 1940, ordinary income in the amount of $38,682.24 and a net capital gain of $9,883.54 realized by an irrevocable trust created by decedent in which the power to alter and amend was reserved without any right to retake the principal or income. The other issue involves the question whether there should be included in decedent's income the sum of $25,000 which was payable under the terms of the will of decedent's father to a named beneficiary. Both of these issues were determined by this Court in a prior proceeding, entitled "Estate of J. P. Morgan, Deceased," Docket No. 1770, now on appeal.

The petitioner presents these two issues only to preserve them in the event our prior decision is reversed. We conclude, on this record, that both the contested amounts were properly included in the gross income of the petitioner in the taxable year 1940 and, therefore, sustain the respondent on both such issues.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*