Church, Ch. J.
We concur with the conclusion arrived at by the Gleneral Term. With the policy of the statute in question we have no concern, but that the acts complained of, viz., having in possession certain game birds after the first of March, although killed prior to the prohibited time, or brought from another State where the killing was not prohibited, is within the restraint of the statute there can be no doubt. The seventh section declares that no person shall kill or expose for sale, or have in his or her possession after the same has been killed, any quail, between the first day of January and twentieth of October, under the penalty of twenty-five dollars. (Laws of 1871, p. 1669.) The eighth *13 section contains a similar provision relative to ruffed grouse or partridge, and pinnated grouse or prairie chickens, fixing the time between the first day of January and first day of September. The language of these sections is plain and unambiguous. Hence there is no room for construction. It is a familiar rule that when the language is clear courts have no discretion but to adopt the meaning which it imports. The mandate is that “ any person having in his or her possession,” between certain dates, certain specified game killed, shall be liable to a penalty. The time when or the place where the game was killed, or when brought within the State, or where from, is not made material by the statute, and we have no power to make it so. But if the intent in this respect was doubtful, section 33 would remove it. That section provides that persons selling, or in possession of game, shall not be liable to the penalty up to the first day of March, provided they prove that it was killed before the prohibited time, or outside of the limits of the State where the killing; was not prohibited. Provision is made by this section for the cases supposed not to be within the purview of the seventh or eighth section, but it is clear that the legislature did not so suppose, but intended to qualify those sections by allowing possession to continue, and a sale of game lawfully killed or acquired for two months, but after that period the inhibition is absolute.
It is admitted in this case that the defendant had possession of the game after the first of March, and the fact alleged, that it was either killed within the lawful period or brought from another State where the killing was lawful, constitutes no defence. The penalty is denounced against the selling or possession after that time, irrespective of the time or place of killing. The additional fact alleged, that the defendant had invented a process of keeping game from one lawful period to another, is not provided for in the act, and is immaterial.
The objection of a want of power in the legislature to pass the act is not tenable. It is not in conflict with the State Constitution within the case of Wynehamer v. People. (13 N. Y., 378.) That case involved the validity of the prohibitory *14 liquor law, and determined that such law, so far as it applied to and substantially destroyed property in liquors owned or possessed at the time the act took effect, was in violation of that provision of the State Constitution which declares that no person shall be deprived of life, liberty or property without due process of law, but impliedly, if not necessarily, it affirmed the power if the law had only applied to liquors subsequently manufactured and acquired. Here the property was acquired subsequent' to the passage of the act and with the presumed knowledge of its provisions and conditions. The legislature may pass many laws the effect of which may be to impair or even destroy the right of property. Private interest must yield to the public advantage. All legislative powers, not restrained by express or implied provisions of 'the Constitution, may be exercised. The protection and preservation of game has been secured bylaw in all civilized countries,' and may bé justified on many grounds, one of which is for purposes of food. The measures best adapted to this end are for the legislature to determine, and courts cannot review its discretion. If the regulations operate, in any respect, unjustly or oppressively, the proper remedy must be applied by that body. Some of the provisions of the act in question might seem, to one unversed in the mysteries of the subject, to be unnecessarily stringent and severe, but we cannot say that those involved in this action are foreign to the objects sought to be attained, or outside of the wide discretion vested in the legislature.
It is also urged that the statute in question violates that provision of the Constitution of the United States which authorizes Congress to regulate commerce among the States. It is unnecessary to consider how far the exercise of the power of Congress under this provision would interfere with the authority of the States to pass game laws, and regulate and prohibit the sale and possession of game either as a sanitary measure or for its protection as an article of food. It will suffice for this case that the statute does not conflict with any law which Congress has passed on the subject. States cannot *15 pass laws in respect to subjects expressly prohibited by the Constitution, nor when the power is conferred upon Congress and its exercise by the States conflicts with the policy or functions of the government, but there are many powers conferred upon Congress which, until exercised by it, are regarded as dormant and may be exercised by the States within their limits, among which is the power to regulate commerce. “ If the terms of the grant are not exclusive, and there is no express prohibition upon the States, and no repugnancy or inconsistency in its exercise by the States, the authority is concurrent.” (People ex rel. Barlow v. Curtis, 50 N. Y., 326.) The celebrated license cases, reported in 5 Howard (U. S.), 504, contain an elaborate examination of the powers of the States under this clause of the Constitution. One of those cases involved the right of a State to require a license for the sale of a package of gin, imported from another State, as to which Taney, Ch. J., said : “ As Congress has made no regulation on the subject the traflic in the article may be lawfully regulated by the State as soon as it is landed in its territory, and a tax imposed upon it, or a license required, or the sale altogether prohibited, according to the policy which the State may suppose to be its interest or duty to pursue.” And Catbon, J., after alluding to the exercise of power by the States, upon subjects involved in various affirmative grants to Congress, said: “ It is now too late, under existing circumstances, for this court to say that the similar affirmative power to regulate commerce with foreign nations and among the States, shall be held an exclusive power in Congress.”
It is quite evident, within these principles which have been repeatedly reiterated by the Supreme Court of the United States, that the act in question does not violate the Constitution of the United States, nor any law of Congress. (4 Wheat., 122; 12 id., 213; 12 How. [U. S.], 269; 9 Wheat., 195; 16 Wallace, 36 ; 15 id., 279; 6 id., 31.)
The judgment of the General Term must be affirmed.
All concur.
Judgment affirmed.