GILMAN H. PERKINS et al., Respondents, *v.* GEORGE R. SMITH et al., Appellants.

The term "individual banker," as used in the state statutes, denotes a person who, having complied with the statutory requirements, has received authority from the banking department to engage in the business of banking, subject to its inspection and supervision and to the burden imposed.

"Private bankers" are persons or firms engaged in the business of banking without any special privileges or authority by statute.

Notwithstanding the fact that the terms "private banker" and "individual banker" are used as synonyms, denoting an "individual banker" in one section of the banking act of 1882 (§ 99, chap. 409, Laws of 1882), the terms as used in other sections of the act have their separate and independent meanings.

Under the provisions, therefore, of said act (§§ 68, 69) placing and continuing "private and individual bankers" on an equality with national banks, so far as the taking and receiving of a greater rate of interest than the legal rate is concerned, persons or firms engaged in banking, who are not individual bankers, in exacting more than the legal rate on loans made in the usual course of banking business, are exempted from the effect of the usury laws of the state.

The statutes, state and national, upon the subject of banking and usury, collated.

Words having a precise and well-settled meaning in the jurisprudence of a country, are to be understood in the same sense when used in its statutes, unless a different meaning is unmistakably intended.

Reported below, 41 Hun, 47.

(Argued October 10, 1889; decided November 26, 1889.)

APPEAL from a judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order, made June 1, 1886, which affirmed a judgment in favor of plaintiffs, entered on a decision of the court on trial at Special Term.

This action was begun January 7, 1885, to foreclose a mortgage executed February 13, 1884, by George R. Smith to Erickson, Jennings & Co., as a continuing security for all sums not exceeding $10,000, which the mortgagor might owe the mortgagees at any time within ten years after the date of the mortgage.

The plaintiffs, who are the surviving partners of the mortgagees, allege, in their complaint, that February 7, 1884, George R. Smith made his promissory note whereby he promised to pay to their order $2,500, three months after date, at the National Park Bank in the city of New York, and delivered the same to the payees, who discounted it on that date, and that February 11, 1884, George R. Smith made his second promissory note, whereby he promised to pay to the order of the plaintiffs $1,500, three months after date, at said National Park Bank, and delivered it to the payees, who discounted it on that date, and that both notes were due and unpaid, with interest on the first from October 13, 1884, and on the second from October 17, 1884.

The sole defense interposed to this action is that the notes and mortgage are void for usury. It is conceded, and found as a fact, that the plaintiffs were, when the transactions occurred out of which this action arose, bankers under their firm name of Erickson, Jennings & Co., and engaged in receiving deposits, subject to check, discounting commercial paper and dealing in exchange at Rochester, New York. The avails of the notes were credited by the plaintiffs to Smith's account, and were drawn on his check, so that the relation of banker and customer existed between these litigants in respect to the loans in controversy.

*Theodore Bacon* for appellants. The purpose to exact upon this discount a greater sum than at the rate of six per cent per annum being confessed by the lender, and found as a fact by the court, it is entirely immaterial that the lender did it under the mistaken notion that he could do it lawfully. (*Bank of Salina* v. *Alvord*, 31 N. Y. 473.) The plaintiffs are not excepted from the operation of the usury laws of the state by virtue of chapter 409 of the Laws of 1882. (1 R. S. 772; Laws of 1850, chap. 172; Penal Code, § 353; Laws of 1883, chap. 339; 13 U. S. St. at Large, 108, § 30; Laws of 1882, chap. 409, § 68; *People* v. *Doty*, 80 N. Y. 225; Laws of 1881, chap. 373.) Words are to be interpreted with reference to the general scope and object of the statute. (Pomeroy's

Sedg. on St. and Const. Law, 225; *L. S. & M. S. R. Co.* v. *Rouch*, 80 N. Y. 339, 344; Dwar. on St. 703, 704.) Statutes containing particular exemptions from general burdens are to be strictly construed. (Pomeroy's Sedg. 296, 297 and notes; *State* v. *Woodson*, 41 Mo. 227; *Sprague* v. *Birdsall*, 2 Cow. 419; *B. and U. Pl. R. Co.* v. *Robbins*, 22 Barb. 662; *C. B. Co.* v. *Magee*, 2 Paige, 116; 6 Wend. 85; *B. C. Co.* v. *Buffalo*, 46 N. Y. 506; *People* v. *Davenport*, 91 id. 574, 586; *Warden* v. *Dean*, 4 Price, 65.) If a statute is capable of two interpretations, that shall be given it, if possible, which shall make it consistent with the Constitution, rather than that which will bring it in conflict with it. (*People* v. *Albertson*, 55 N. Y. 50, 56; *M. R. Co.* v. *Beckwith*, 129 U. S. 26, 29.)

*Martin W. Cooke* for respondents. When, at the time of the agreement for a loan, nothing is said as to the rate of interest, the law implies it to be that limited by statute. (*Guggenheimer* v. *Geiszler*, 81 N. Y. 293,) There must not only be an agreement actually made between the parties for the payment of more than lawful interest, but there must be an intent to do so in violation of the statute of usury. The intent must exist in the minds of both parties to the contract. (*Condit* v. *Baldwin*, 21 N. Y. 221; 9 Pet. 399; 7 Johns. Ch. 77.) The facts as proved or found, do not establish usury, no matter who the parties were who made the loans. (*Bank* v. *Walbridge*, 19 N. Y. 134, 143.) The law will not presume a contract illegal, and so void, when it is capable of a construction which will make it lawful and valid. There must be evidence of an agreement or intention to reserve more than lawful interest as interest. (*Curtis* v. *Gokey*, 68 N. Y. 300; *Orms* v. *Dauchy*, 82 id. 443; Tyler on Usury, 468; *Booth* v. *Swezey*, 4 Sheld. 276, 280; *C. S. Bk.* v. *Bidwell*, 29 Barb. 325, 332; *Smith* v. *Hathorn*, 85 N. Y. 211, 214; *Eagle Bk.* v. *Rigney*, 33 id. 613; *Beals* v. *Benjamin*, Id. 61, 67; *Price* v. *Lyons Bk.*, Id. 55; *S. C. Bk.* v. *Schermerhorn*, 1 Denio, 132.) The plaintiffs, at the time of the transactions in question, were private bankers, doing business in this state,

and by the laws of this state they were permitted to charge the interest in advance and to charge a reasonable exchange, and in case they charged more than the legal rate, the penalties therefor prescribed by the laws of this state were only those which apply to the national banks, which is a forfeiture of double the amount of the excess of interest charged. (*Hintermister* v. *F. N Bk.*, 64 N. Y. 212; Laws of 1882, chap. 409, §§ 68, 69; *People* v. *Doty*, 80 N. Y. 225; 1 Otto, 29; *A. S. Bk.* v. *Savery*, 18 Hun, 36, 42; 91 U. S. 29; 64 N. Y. 212; *Bk. of Monroe* v. *Finlay*, 6 Hun, 584; *Farmers' Bk.* v. *Hale*, 15 Abb. Pr. [N. S.] 276.)

FOLLETT, Ch. J. Are loans made for more than the legal rate of interest by persons and firms engaged in banking, but who are not "individual bankers," as defined by chapter 409, Laws of 1882, exempted by sections 68 and 69 of that act, from the effect of the usury statutes of this state when the loans are made in usual course of such business? A brief statement of the causes which led to the introduction into the law of this state of the exemption referred to will aid in determining whether the plaintiffs are of the class of bankers described in and relieved by those sections from the consequences imposed upon citizens generally for receiving more than the legal rate of interest on loans.

The right to engage in banking is a common law-right, and, in the absence of statutory restraint, persons may issue circulating notes and carry on the business of banking in all its branches. (*Attorney-General* v. *Utica Ins. Co.*, 2 Johns. Ch. 371, 377; *N. Y. Fireman Ins. Co.* v. *Ely*, 2 Cow. 678, 710; *Curtis* v. *Leavitt*, 15 N. Y. 10, 52, 80; Morse on Banks [3d ed.] § 13.) The first statute in this state which abridged this right was chapter 117 of the Laws of 1804, which restrained associations not duly authorized from receiving deposits, discounting or issuing circulating notes. This statute was continued by the Revised Laws of 1813. (2 R. L. 234.) Whether these acts restrained individuals as well as associations was a disputed question (*Attorney-General* v. *Utica Ins. Co.*, 2 Johns. Ch. 371, 377; *Bristol* v. *Barker*, 15

Johns. 205); but was set at rest by chapter 236, Laws of 1818, which clearly extended the restraints to persons. It was enacted: "That it shall not be lawful for any person, association of persons or body corporate, from and after the first day of August next, to keep any office of deposit for the purpose of discounting promissory notes, or for carrying on any kind of banking business or operations, which incorporated banks are authorized by law to carry on, or issue any bills or promissory notes, as *private bankers*, unless thereunto specially authorized by law." This is the first statute in which the term "private banker" occurs. This provision was incorporated into the Revised Statutes (1 R. S. 712, § 6), but it was modified by chapter 20, Laws of 1837, so that only the issuing of circulating notes by unauthorized persons and corporations was prohibited, and the prohibition of the Revised Statutes is continued by section 302 of the banking act of 1882. The term "private banker" is used in the same sense in the three statutes.

By chapter 260, Laws of 1838, "any person or association of persons" might, under certain restrictions, be authorized by the comptroller to engage in banking, and, in 1840, this act was amended by chapter 363, and the term "individual banker" was, by that act and chapter 202, Laws of 1840, introduced into the statutes of this state.

The first national bank act was passed February 25, 1863. (Chap. 58, 3d Sess. 37th Cong., 12 U. S. St. at Large, 665.) Under this act, money loaned at usurious rates could not be recovered. June 3, 1864, this law was repealed, and a new act substituted. (Chap. 106, 1st Sess. 38th Cong., 13 U. S. St. at Large, 99.) By the thirtieth section it provided: "And the knowingly taking, receiving, reserving or charging a rate of interest greater than aforesaid, shall be held and adjudged a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. And, in case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back, in an action of debt, twice the amount of the interest thus paid from the association

taking or receiving the same : *Provided*, that such action is commenced within two years from the time the usurious transaction occurred. But the purchase, discount or sale of a *bona fide* bill of exchange, payable at another place than the place of such purchase, discount or sale, at not more than the current rate of exchange for sight drafts in addition to the interest, shall not be considered as taking or receiving a greater rate of interest." This provision was incorporated into the Revised Statutes of the United States. (U. S. R. S. §§ 5197, 5198.)

When the national banking act went into effect corporations, individual bankers, persons and firms were engaged in receiving deposits, discounting commercial paper, selling bills of exchange, and banking corporations and individual bankers having authority from the banking department were engaged in the same business and also in issuing circulating notes. Persons and firms so engaged were called, in commercial language, " private bankers," but so far as we have discovered the term had not then been used in the statutes except in the two instances above referred to. By the act of March 3, 1865 (Chap. 78, 2d Sess. 38 Cong., 13 U. S. St. at Large, 484), a tax was imposed, which is continued (§ 3412, U. S. R. S.) on all national and state banks, of ten per cent on the amount of notes issued by any state bank which those corporations should pay out after July 1, 1866. This put an end to the issuance of circulating notes by state banks and individual bankers. Since July 1, 1866, state banks, individual bankers and private bankers have been engaged, so far as their business is confined to banking, in receiving deposits, discounting commercial paper and selling exchange.

By chapter 163, Laws of 1870, the usury statutes of this state were so modified that " every banking association organized and doing business under and by virtue of the act entitled, ' An act to authorize the business of banking,' passed April eighteenth, eighteen hundred and thirty-eight, and the various acts supplementary thereto and amendatory thereof, is hereby," etc., given the immunities conferred by the statutes of the United States on national banks receiving more than the

legal rate of interest. It was declared in the second section of this act: "That the true intent and meaning of this act is to place the banking associations, organized and doing business as aforesaid, on an equality in the particulars in this act referred to, with the national banks organized under the act of congress." The immunities conferred by this act extended only to incorporated banks; and in 1880 it was amended by chapter 567, by inserting between the words "thereof" and "hereby" the following: "And every private or individual banker or bankers doing business in this state, are," thus extending to them the immunities theretofore conferred upon incorporated banks. The fact that the second, or declaratory section, was not changed did not nullify the amendment.

By chapter 409, Laws of 1882, the statutes of this state relating to banks, banking and trust companies were revised and consolidated. Section 68 provides: "§ 68. Every banking association organized and doing business under and by virtue of the laws of this state, and every private and individual banker or bankers doing business in this state, are hereby authorized to take, receive, reserve and charge on every loan or discount made, or upon any note, bill of exchange or other evidence of debt, interest at the rate of six per centum per annum; and such interest may be taken in advance, reckoning the days for which the note, bill or other evidence of debt has to run.

"The knowingly taking, receiving, reserving or charging a rate of interest greater than aforesaid shall be held and adjudged a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon; and in case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back twice the amount of the interest thus paid, from the association or private or individual banker taking or receiving the same; provided that such action is commenced within two years from the time the said excess of interest is taken."

\*      \*      \*      \*      \*      \*      \*

" § 69. It is hereby declared that the true intent and meaning of the last preceding section is to place and continue the private and individual bankers and banking associations organized and doing business as aforesaid on an equality, in the particulars in said section referred to, with national banks organized under the act of congress, entitled 'An act to provide a national currency, secured by pledge of United States bonds, and to provide for the circulation and redemption thereof, approved June third, eighteen hundred and sixty-four.' "

The term "private banker" only occurs in sections 68, 69, 99 and 302 of chapter 409, Laws of 1882. Section 99 is a re-enactment of section 8 of chapter 202 of the Laws of 1840, and in both the terms "individual banker" and "private banker" are used synonymously, and denote an individual banker. In section 302 the term "private banker" denotes persons engaged in banking without having special statutory privileges, and the term was used in the same sense in chapter 236, Laws of 1818, and in 1 Revised Statutes, 712, section 6, from which section 302 is derived.

Notwithstanding the fact that the terms "individual banker" and "private banker" are used as synonyms in section 99 of chapter 409, Laws of 1882, and in the statute from which that section is derived, we think the terms are independent, and each had a well understood meaning when chapter 567, Laws of 1880, and chapter 409, Laws of 1882, were enacted. Since the passage of chapter 363, Laws of 1840, the term "individual banker" has been frequently used in our statutes and reports and has acquired a definite meaning. It denotes a person who, having complied with the statutory requirements, has received authority from the banking department to engage in the business of banking, subject to its inspection, supervision, and to the burdens imposed. (*People* v. *Doty*, 80 N. Y. 225, 228.) Private bankers are persons or firms engaged in banking without having any special privileges or authority from the state. (*People* v. *Doty, supra.*) Words having a precise and well settled meaning in the jurisprudence of a country are to be understood in the same sense when

used in its statutes, unless a different meaning is unmistakably intended. (*Stephenson* v. *Higginson*, 3 H. L. Cases, 638.)

Chapter 409, Laws of 1882, is not merely a codification of the statutes relating to incorporated banks and individual bankers, but it regulates the business of banking, and the argument that private bankers are not within the general scope and object of the statute loses much of its force, in view of this fact, and of the further fact that eight years before the statutes were codified the term "private banker" was brought into the statute which extended the immunity for taking more than the legal rate of interest, beyond incorporated banks, and included individuals.

We think that full effect cannot be given to the language employed in sections 68 and 69 without holding that the plaintiffs are protected by them from the consequences imposed by the general statutes on citizens not engaged in banking who receive more than the legal rate of interest for loans. In reaching this conclusion we have not overlooked those cardinal rules for the interpretation of statutes, that those conferring special privileges or immunities upon classes are to be strictly construed; and when a statute admits of two constructions, the one in harmony with, and the other in hostility to, the general system of legislation on the subject to which it relates, the construction which harmonizes all the statutes should be adopted. It is urged with great force that this construction exempts persons whose business it is to loan money from the penalties imposed upon citizens generally for receiving more than the legal rate of interest — that he who does it constantly as a private banker escapes, while the citizen, who does it but once, and not as a business, must lose his loan. This is an argument which may well be addressed to the law-making power.

The judgment should be affirmed, with costs.

All concur, except BROWN, J., dissenting, and BRADLEY and HAIGHT, JJ., not sitting.

Judgment affirmed.