## [No. 3781.]

## IN RE INTERNAL IMPROVEMENT FUND.

1. "INTERNAL IMPROVEMENT."
The phrase "internal improvement" as used in section 12 of the enabling act (sec. 193, 1 Mills' Ann. Stats.) and in section 2378 Rev. Stats. U. S. does not include public buildings, such as asylums, state houses, universities, or any other public buildings of like character. The fund created by the proceeds derived under section 12 cannot be applied to the construction of such buildings.

The opinion is in response to the following communication and interrogatories from the governor, to which was attached senate bill No. 30 section 3 which reads as follows:

"Section 3. That for the purpose of constructing a cottage for the female patients of said asylum, there is hereby appropriated out of the internal improvement fund, the sum of twenty-five thousand dollars ($25,000) which shall be the total amount to be expended in the construction of a cottage for the female patients by the Commissioners of the Insane Asylum."

"To THE HONORABLE THE SUPREME COURT OF THE STATE OF COLORADO.

" *Whereas,* section 3 of article VI of the constitution of the state of Colorado, as amended, provides that the Supreme Court shall give its opinion upon important questions upon solemn occasions, when required by the governor; and,

" *Whereas,* a certain senate bill No. 30 has been passed by both houses of the eleventh general assembly, a copy of which is hereto attached, and has been presented to me in due course for my approval or disapproval as governor; and,

" *Whereas,* upon reading and examining said bill, it appears to me that a certain item, sought to be appropriated by section 3 thereof, out of the 'Internal Improvement Fund' may be in violation of the terms and conditions of the grant of the United States Government, as set forth in that portion of the enabling act creating said fund, the same being section 193 on page 93 of Mills' Annotated Statutes; and,

" *Whereas,* it is considered by me that the foregoing question is important, and the occasion solemn,

" *Now therefore,* I, Alva Adams, Governor of Colorado, do hereby respectfully require you, the Supreme Court of the state of Colorado, to give your opinion upon the following questions:

"1st. Is section 3 of said act obnoxious to the terms of the granting act aforesaid?

"2d. Is it lawful for the general assembly of the state of Colorado, to appropriate any portion of the said 'Internal Improvement Fund' for the erection of public buildings, such as asylums, state houses, universities and colleges, or any other public institution of a like character?

" Very respectfully,

" ALVA ADAMS,

" *Governor of Colorado.*

"Done at Denver, Colorado, this 10th day of April, A. D. 1897."

The questions were argued by ATTORNEY GENERAL BYRON L. CARR, Mr. CALVIN E. REED, Mr. J. W. MC-CREERY and Mr. T. M. ROBINSON, *amici curiæ.*

PER CURIAM. The questions submitted call for a definition of the words " internal improvements " as used in sec. 12 of the enabling act, being sec. 193, 1 Mills' Ann. Stats., and which reads:

" That five per centum of the proceeds of the sales of agricultural public lands lying within said state, which shall be sold by the United States subsequent to the admission of said state into the Union, after deducting all the expenses incident to the same, shall be paid to the said state for the purpose of making such internal improvements within such state as the legislature thereof may direct."

And also the meaning to be given to the same term as used in sec. 2378, Rev. Stat. U. S. 1878.

In other words, does the phrase as therein used include " public buildings, such as asylums, state houses, universities and colleges, or any other public institution of a like character," so that the proceeds derived from the sources mentioned in these acts may be applied to their construction ?    As we said in *In re Internal Improvements*, 18 Colo. 317 :

" The enabling act does not specify what kind of improvements shall be considered internal improvements ; hence, we must consider the sense in which those words are used in American legislation."

Therefore, if they have, by common legislative usage and judicial construction, acquired a fixed historical meaning, such meaning must control, rather than the etymological definition of the words themselves.    That the various state institutions referred to are internal improvements in the general signification of that phrase will not be disputed, but, nevertheless, it has been uniformly held that they do not fall within the catagory of " internal improvements " contemplated by that term as used in legislative and constitutional enactments.    The cases in which this distinction has been made, arose under constitutional provisions absolutely prohibiting states from engaging in any " works of internal improvement ; " and while recognizing every other species of improvements of a public nature as being within the meaning of the phrase " internal improvement " as therein used, they except those which are built for and used by the state in its sovereign capacity, " such as a state capitol, state university, penitentiaries, reformatories, asylums, quarantine

buildings and the like," for education, the prevention of crime, charity, and the preservation of the public health are all recognized functions of state government. *Rippe v. Becker*, 56 Minn. 100; *Leavenworth Co. v. Miller*, 7 Kansas, 479.

That the buildings named are not such internal improvements as are contemplated in section 12 is evident also from other provisions of the enabling act, whereby donations of public lands are specifically made for public buildings; among them, section 8 which donates 50 sections for a capitol building; section 9, 50 sections for the purpose of erecting a suitable building for a penitentiary, or state prison; section 10, 72 sections for the use and support of a state university; section 11 donates certain salt springs, together with six sections of land adjoining, to be used and disposed of on such terms, conditions and regulations as the legislature shall direct; section 12, five per cent of the proceeds of sales of agricultural public lands for internal improvements. By these provisions several separate and distinct donations are made for specified purposes, and the proceeds derived therefrom constitute trust funds, to be applied thereto. For the purpose of preserving and administering these trusts, section 10 of article 9 of our state constitution provides that:

"The general assembly shall, at the earliest practicable period, provide by law that the several grants of land made by congress to the state shall be judiciously located and carefully preserved and held in trust, subject to disposal, for the use and benefit of the respective objects for which said grants of land were made."

It is therefore apparent that neither congress in making the grants, nor the framers of the constitution in providing for their preservation and administration, intended that either of these funds should be diverted to any other purpose than that for which it is provided; and therefore that the proceeds derived under section 12 should not be applied to the erection of any buildings of the class thus specifically provided for.

Our conclusion is that the appropriation provided in section 3 of the act submitted is not warranted under the terms of section 12 of the enabling act; and we also feel constrained to answer the second question in the negative.