### HALL v. BAKER et al.

(Supreme Court, Appellate Division, Third Department. November 19, 1901.)

1. LIBEL—PUBLICATION BY ATTORNEY—EXCEEDING AUTHORITY.

Where the attorney for the creditors' committee of an insolvent bank was authorized to publish an expert's statement as to the condition of the bank, and in connection therewith he published alleged libelous matter, the committee will not be responsible for such libel, the publication not being within the scope of the attorney's employment.

2. SAME—INSTRUCTION—PRIVATE BANKER — ACCEPTING DEPOSITS WHEN INSOLVENT.

In an action for libel for the publication of a statement that plaintiff had committed crimes in the conduct of a certain private bank, it was shown that deposits were received when the bank was known to be insolvent. The jury were instructed that plaintiff's alleged crime was defined by Pen. Code, § 601, which provides that an officer, agent, teller, or clerk of any bank or banking association, and every individual who receives deposits knowing that such bank or banker is insolvent, is guilty of a misdemeanor. Section 609 prescribes that any person engaged in banking, not subject to the supervision of the superintendent of banks, and not required to report to such superintendent, who uses an office sign indicating that such office is a bank, is guilty of a misdemeanor. *Held*, that section 601 relates only to a bank or banker subject to the supervision of the superintendent of banks, and not to a private banker, and hence the instruction of the court was erroneous.

Appeal from trial term, Washington county.

Action by John Hall against Frederick I. Baker, Isaac J. Finch, Henry C. Clements, and Charles A. Vaughn. From a judgment in favor of the defendants Finch, Clements, and Vaughn and against the defendant Baker, and from an order denying a new trial on the minutes of the court, the plaintiff appeals. Affirmed as to the defendants Finch, Clements, and Vaughn, and reversed as to the defendant Baker.

Appeal by the plaintiff from a judgment in favor of the defendants, dated the 12th day of March, 1901, and entered in the office of the clerk of the county of Washington on said day, dismissing the complaint of the plaintiff as against the defendants Isaac J. Finch, Charles A. Vaughn, and Henry C. Clements by direction of the justice presiding at the trial, and as against the defendant Frederick I. Baker upon the verdict of a jury on a trial had before the court and a jury at the Washington trial term, held in January, 1901, and also from an order dated the 29th day of January, 1901, denying the plaintiff's motion for a new trial on the minutes of the court. This action is brought to recover damages for an alleged libel of the plaintiff by defendants.

The action is one to recover damages for a libel of the plaintiff by the defendants. The complaint alleges that on or about the 9th day of October, 1899, the defendants maliciously composed and published, concerning the plaintiff, in a newspaper called the "Ft. Ann Republic," published at Ft. Ann, N. Y., an article containing these false and defamatory words: "Your committee being convinced that John Hall and J. Melvin Adams were guilty of grave crimes in connection with the banking business of John Hall & Co., and the failure of said firm, sought, in the usual and proper way, to have the matter considered by the grand jury sitting at Salem, September 25th–29th,

but failed for reasons obvious to those present at Salem during the time
specified, the principal of which was the failure of the assignee to produce
the books and papers until Friday evening just before the adjournment of the
jury, which he had been subpœnaed to produce on Monday. We believe that
such failure was a miscarriage of justice, improperly procured, but request
that all criticism be reserved." The defendants appeared by one attorney,
but the defendant Frederick I. Baker answered separately from the other
defendants. The defendant Baker admitted the publication of the alleged
libel, and that the same was written by him. He denied malice, and alleged
that the matter stated in the complaint was a part only of the article pub-
lished, and that the article as a whole was not false or defamatory. The an-
swer of the other three defendants denies that they composed or published
the alleged libelous article, and also sets up other matter in defense.

In 1873 John Hall, Orson W. Sheldon, and Howland Fish entered into a co-
partnership as private bankers at Ft. Ann, N. Y. The original capital was
$30,000. Hall put in $10,000, Fish $10,000, and Sheldon and Hall $10,000. In
1874 or 1875, Fish retired, drawing out something over $10,000. The copart-
nership then consisted of Hall and Sheldon until July 1, 1889, when Sheldon
withdrew, and J. Melvin Adams took his place. Sheldon drew out $5,035,
being that he called "his interest." This was done by crediting Adams with
the amount, and his paying it to Sheldon. Adams never put in to exceed
$500. On August 8, 1892, Hall told Adams, in substance, that he was in-
dorser on various notes that he thought might make him trouble, and that if
he (Adams) would assume all the liabilities of the bank, and care for Mrs.
Hall in case she outlived him, he would turn over the entire concern to him
(Adams). He said he wanted to fix it so the bank would be all right. Hall's
account was thereupon credited with $10,000, his capital in the bank; $3,923;
called his share of profits; and he was charged with notes held by the bank
on which he was indorser, and also certain overdrafts, for which he was
liable, amounting to $9,904.24. He gave to Adams a check for about $3,000
as a present, and another of $1,000, which he said should be placed to capital
account, and the balance went into the profit account. The $1,000 entered
in capital account was never drawn out by Hall, but was subsequently
charged to profit account. The firm name of John Hall & Co. was never
changed. Hall was away from Ft. Ann for about one year prior to August,
1898, when he returned. Hall found Adams ill at his house, and he went to
see some of the debtors of the bank, and consulted with an attorney about
Adams making an assignment. A general assignment was made by Adams
to Orson W. Sheldon, but deposits were received at the bank during the day
the assignment was made. By direction of Hall, they were entered in the
pass books of the depositors, but were not put upon the books of the bank,
Thereafter all of the deposits made at the bank that day, with one excep-
tion, were returned to the depositors. Subsequently the creditors met, and a
committee was appointed in the interest of the creditors, and such committee
employed one Gallian, an expert accountant, to make an examination, and he
reported at length to the creditors' committee. The defendant Frederick I.
Baker acted as attorney for the committee. At a meeting of the committee,
when the report of Gallian was read, it was decided that Gallian should
make a statement from his report, and that such statement should be pub-
lished. Baker was authorized to publish the statement so to be prepared by
Gallian. The statement was prepared and delivered to Baker. Some time
thereafter Baker, without the knowledge of either of the other defendants,
wrote that part of the article published which is quoted in the complaint,
and the same was published in connection with the statement of Gallian.

Argued before PARKER, P. J., and KELLOGG, EDWARDS,
SMITH, and CHASE, JJ.

C. H. Sturges, for appellant.

Edgar Hull (Edgar F. Brackett, of counsel), for respondents.

CHASE, J. There is no evidence in the record sufficient to up-
hold a finding that the alleged libelous matter was read in the pres-

ence of the defendants before the creditors' committee, or that the defendants, or either of them, other than the defendant Baker, ever authorized or directed the publication of such alleged libelous matter. It was solely the act of Baker. Baker was not the attorney of the committee for the purpose of publishing libelous matter, nor for the purpose of preparing for publication any matter whatever. The preparation and publication of the alleged libelous matter was not in the line of his employment. Had Baker been directed to prepare an article for publication, and in doing so had exceeded his authority as to the matter to be included in the article, some of the authorities cited by the appellant would be applicable. The testimony in regard to Finch arranging with the proprietor of the paper for the publication of the report referred to the report only, and not to the additional matters published; nor is the evidence by which it is claimed by the appellant that the defendants, other than the defendant Baker, ratified and approved the article as published, sufficient to justify such conclusion. It is not shown that the defendants Finch, Vaughn, or Clements ever circulated the paper in which the publication was made or assented to the matter in any manner whatsoever. What they did related wholly to indemnifying the publisher of the Ft. Ann Republic, and was not an approval of the words published. The dismissal of the complaint as against the defendants, other than the defendant Baker, was right. The trial court submitted to the jury the case as against the defendant Baker, and in doing so expressly stated that the particular crime which it was alleged was committed by the plaintiff, and which the article charged was committed, is defined by section 601 of the Penal Code, and then read the same to the jury. He further said to them, in substance, that, if they found that the plaintiff continued to be a member of the firm down to the time of the failure, they must find that he knew that the bank was insolvent when the deposits were received on the day of failure, and that he violated section 601 of the Penal Code. He further charged the jury, in substance, that if he was not a member of the firm, but if Adams placed Hall in control of the bank, and assumed direction of the bank as agent of Adams, and directed that deposits be received knowing that the bank was insolvent, his acts came within the provisions of the section quoted.

The exceptions taken to the charge, together with the statement made by the appellant when testimony was offered in regard to the receipt of deposits on the day of the assignment, are sufficient to raise the question before this court as to whether John Hall & Co. were included within the provisions of section 601 of the Penal Code. Section 601 of the Penal Code is as follows:

"Sec. 601. An officer, agent, teller or clerk of any bank, banking association or savings bank, and every individual banker or agent, and any teller or clerk of an individual banker, who receives any deposits knowing that such bank, or association, or banker is insolvent, is guilty of a misdemeanor."

Section 609 of the Penal Code is as follows:

"Sec. 609. Private Banker Using Sign. Any person engaged in banking in this state, not subject to the supervision of the superintendent of banks, and.

not required, by law to report to such superintendent, who was not engaged in such banking before May 23, 1885, who (1) uses an office sign at the place where such business is transacted, having thereon any artificial or corporate name, or other words indicating that such place or office is the place or office of a bank; or (2) uses or circulates any letter-heads, bill-heads, blank notes, blank receipts, certificates, circulars or any written or printed paper whatever, having thereon any artificial or corporate name, or other word or words indicating that such business is the business of a bank,—is guilty of a misdemeanor."

It is plain from a reading of these sections of the Penal Code that section 601 relates only to a bank, banking institution, or individual banker, subject to the supervision of the superintendent of banks, and required by law to report to such superintendent, and does not in any way refer to a private banker. The distinction between an individual banker and private banker is well known and recognized in all our statutes and by the decisions of the court. In Perkins v. Smith, 116 N. Y. 441, 23 N. E. 21, the court say:

"Since the passage of chapter 363, Laws 1840, the term 'individual banker' has been frequently used in our statutes and reports, and has acquired a definite meaning. It denotes a person who, having complied with the statutory requirements, has received authority from the banking department to engage in the business of banking subject to its inspection, supervision, and to the burdens imposed. People v. Doty, 80 N. Y. 225, 228. Private bankers are persons or firms engaged in banking, without having any special privileges or authority from the state. People v. Doty, supra. Words having a precise and well-settled meaning in the jurisprudence of a country are to be understood in the same sense when used in its statutes, unless a different meaning is unmistakably intended."

This case was presented to the jury and decided by them upon an erroneous theory, and the judgment, as against the defendant Frederick I. Baker, must be reversed, and a new trial granted herein as against him. The judgment herein, as against the defendants Finch, Vaughn, and Clements, affirmed, and as against the defendant Baker reversed, and a new trial ordered as against him, without costs to either party in this court. All concur, except SMITH, J., not voting.