## IN RE WISNER.

### (No. 2,492.)

(Submitted November 22, 1907.   Decided December 16, 1907.)

[92 Pac. 958.]

*Criminal   Law—"Individual   Bankers"—Receiving   Deposits
When   Bank   Insolvent—Penal   Statutes—Construction—
Habeas Corpus.*

Statutory Construction—Headnotes—Chapter and Section Headings.
  1.  In the construction of statutes, the meaning of which is in doubt,
  the headnotes, chapter and section headings may properly be exam-
  ined.

Same—Statutes Adopted from Foreign States After Construction.
  2.  Where the statute of a foreign state has been construed by its
  courts prior to its adoption by the legislature of this state, the in-
  terpretation so placed upon it is also adopted.

Criminal Law—"Individual Bankers"—Receiving Deposits When Bank
  Insolvent—Void Statute—*Habeas Corpus.*
  3.  Complainant was convicted, under an information based upon
  section 986, Penal Code, for having received deposits as an "indi-
  vidual banker" when knowing that his bank was insolvent. The
  laws of this state make no provision for "individual" bankers, but
  do so for "private" bankers. Section 986, *supra,* appears to have
  been adopted from the state of New York after the courts of that
  state had construed the term "individual banker" to mean one other
  than a private banker, and after such term had acquired the fixed and
  definite meaning, in the law, of one who was authorized to do bank-
  ing subject to the supervision of the banking law. *Held,* that the
  term "individual banker" does not mean a "private" banker, that,
  since under the laws of this state there is no such person as an in-
  dividual banker, complainant was convicted of an offense not known
  to the Penal Code, that the judgment of conviction is void and com-
  plainant entitled to his release from custody as prayed in his ap-
  plication for writ of *habeas corpus.*

Penal Statutes—Construction—Doubt as to Meaning—How Resolved.
  4.  If, in construing a penal statute, the court should entertain a rea-
  sonable doubt as to its meaning, such doubt must be resolved in favor
  of the defendant attacking an information based upon the provi-
  sions of such statute.

Same.
  5.  While the construction of penal statutes should not be so strict
  as to defeat the plain intent of the legislature, it must give the words
  employed the sense in which they were obviously used; and if then
  the legislative intent cannot be given effect, the law must fall.

ORIGINAL APPLICATION by G. S. E. Wisner for writ of *habeas
corpus.*   Complainant ordered discharged.

*Mr. W. B. Rodgers,* and *Mr. J. H. Duffy,* for Complainant.

The criminal statutes cannot be extended to a case within the reason and mischief of the statutes, unless it is also both within the letter and the manifest intention thereof. (Lewis' Sutherland on Statutory Construction, secs. 521, 524; Bishop on Statutory Crimes, 3d ed., sec. 194; *Ex parte Kohler,* 74 Cal. 44, 15 Pac. 436; *People* v. *Tisdale,* 57 Cal. 106; *The Schooner Enterprise,* 1 Paine, 32, Fed. Cas. No. 4499; *Ex parte McNulty,* 77 Cal. 168, 11 Am. St. Rep. 257, 19 Pac. 237; *State* v. *Walsh,* 43 Minn. 444, 45 N. W. 721; *Ex parte Bailey,* 39 Fla. 734, 23 South. 553; *Hines* v. *Wilmington etc. Ry. Co.,* 95 N. C. 434, 59 Am. Rep. 250; *Western Union Tel. Co.* v. *Axtell,* 69 Ind. 99; *Cook* v. *State,* 26 Ind. App. 278, 59 N. E. 490; *State* v. *Cudahy Packing Co.,* 33 Mont. 190, 114 Am. St. Rep. 804, 82 Pac. 833.)

"Where a statute of a foreign jurisdiction, which had there received a settled judicial construction, is adopted, wholly or in part, and enacted as a law of the state adopting it, it is presumed that the construction previously put upon it is adopted with it, and it should be interpreted according to such construction. This rule applies equally to re-enacted statutes; and it is likewise applicable to single words or phrases borrowed from another enactment." (Black on Interpretation of Law, p. 159.) By a long line of decisions of this court, this rule has uniformly been given full force and effect. (*Territory* v. *Stears,* 2 Mont. 330; *Lindley* v. *Davis,* 6 Mont. 453, 13 Pac. 118; *First Nat. Bank* v. *Bell,* 8 Mont. 32-46, 19 Pac. 403; *Nelson* v. *Great Northern Ry. Co.,* 28 Mont. 297, 72 Pac. 642. See, also, *Blaylock* v. *Incorporated Town of Muskogee,* 117 Fed. 125, 127, 54 C. C. A. 639; *Sanger* v. *Flow,* 48 Fed. 152, 1 C. C. A. 56; *Jessup* v. *Carnegie,* 80 N. Y. 441, 36 Am. Rep. 643; *City of Laporte* v. *Gamewell,* 146 Ind. 466, 58 Am. St. Rep. 359, 45 N. E. 588, 35 L. R. A. 686.)

The legislature did not intend to include private bankers in section 986, Penal Code. (See *State* v. *Kelsey,* 89 Mo. 623, 1 S. W. 838; *Daly Bank etc.* v. *Great Falls etc.,* 32 Mont. 298, 80 Pac. 252; *State* v. *Rumberg,* 86 Minn. 399, 90 N. W. 1055;

*Standard Oil Co.* v. *Commonwealth,* 119 Ky. 75, 82 S. W. 1020; *People* v. *Prillen,* 173 N. Y. 67, 65 N. E. 947; *Ex parte Bailey,* 39 Fla. 734, 23 South. 553; *State* v. *Walsh,* 43 Minn. 444, 45 N. W. 721; *State* v. *Krueger,* 134 Mo. 262, 35 S. W. 604; *State* v. *Wentler,* 76 Wis. 89, 44 N. W. 841; *Hogan* v. *Akin,* 181 Ill. 448, 55 N. E. 137; *Matthews* v. *Murphy* (Ky.), 63 S. W. 785; *Pool* v. *Simmons,* 134 Cal. 621, 66 Pac. 872; *Ritchey* v. *People,* 22 Colo. 251, 43 Pac. 1026; *People* v. *Taylor,* 96 Mich. 576, 56 N. W. 28, 21 L. R. A. 287; *State* v. *Gaster,* 45 La. Ann. 636, 12 South. 739; *Reiche* v. *Smythe,* 13 Wall. 162, 20 L. Ed. 566.)

The word "banks," as it appears in the section headnote, and the word "bank," as it appears in the section itself, clearly signify and comprehend only incorporated banks. (*State* v. *Kelsey,* 89 Mo. 623, 1 S. W. 838; *State* v. *Reid,* 125 Mo. 43, 28 S. W. 173; *Way* v. *Butterworth,* 106 Mass. 75; *Way* v. *Butterworth,* 108 Mass. 109; *Campbell's Exrs.* v. *Farmers' Bank of Kentucky,* 10 Ky. 154; *Commonwealth* v. *McKean Co.,* 200 Pa. St. 383, 49 Atl. 982; *People* v. *Doty,* 80 N. Y. 232.)

The word "association," as used in this section and other sections of this chapter, undoubtedly means a corporation or *quasi* corporation. (*State* v. *Taylor,* 7 S. Dak. 533, 64 N. W. 550; Anderson's Law Dictionary, 85; *People* v. *Doty,* 80 N. Y. 231.) The foregoing goes to strengthen the intention of the legislature, as clearly expressed in the section and chapter headings, not to include private persons, firms and copartnerships, but to actually exclude them from the operation of Chapter XI, which said intention not only conflicts with the intention which would be expressed by the phrase "individual banker," if that phrase means a "private banker," but is absolutely and squarely repugnant thereto.

Thus we find in the same law two conflicting and repugnant intentions. If the intention expressed by the phrase "individual banker" is given effect, it antagonizes and neutralizes the other intention. Both are therefore void on the ground that the legislature *uno flatu* has enacted a contradiction. The court has no authority to choose between these conflicting in-

tentions. It can only administer, not make, the law. So far, then, as these repugnant intentions come in conflict with each other, the law is simply void and inoperative. (*Hilburn* v. *St. Paul Ry. Co.*, 23 Mont. 229, 58 Pac. 551; *State* v. *Partlow*, 91 N. C. 550, 49 Am. Rep. 652; *In re Hendricks*, 60 Kan. 796, 57 Pac. 965; *State ex rel. Wyatt* v. *Ashbrook*, 154 Mo. 375, 77 Am. St. Rep. 775, 776, 55 S. W. 627, 48 L. R. A. 265.)

To hold that the phrase "individual banker" means a private banker, would also result in making the law inoperative and void, because not uniform in its operation or application. "Individual" is essentially a differentiating word. It distinguishes one from a greater number. It is one entity; one distinct being; a single one. Members of firms and copartnerships engaged in the private business of banking would not be subject to the law. To be punishable, the person must bank alone. Such a law is not uniform in its application or operation, and therefore void. (*People* v. *Doty, supra; State* v. *Cudahy Packing Co.*, 33 Mont. 190, 114 Am. St. Rep. 804, 82 Pac. 833.)

If the court below had no jurisdiction of the pretended offense charged in the information, or there is no law by which the petitioner can be punished for the matters charged in the information, *habeas corpus* is a proper remedy, and the petitioner ought to be discharged. (*Ex parte Mirande*, 73 Cal. 365, 14 Pac. 888; *Ex parte McNulty*, 77 Cal. 164, 11 Am. St. Rep. 257, 19 Pac. 237; *Easton* v. *Iowa*, 188 U. S. 232, 23 Sup. Ct. 288, 47 L. Ed. 452; *In re Snow*, 120 U. S. 274, 7 Sup. Ct. 556, 30 L. Ed. 658; *Ex parte Clark*, 100 U. S. 399, 25 L. Ed. 715; *Ex parte Siebold*, 100 U. S. 371, 25 L. Ed. 717; *Ex parte Lange*, 18 Wall. 163, 21 L. Ed. 872; *Hans Nielsen, Petitioner*, 131 U. S. 176, 6 Sup. Ct. 672, 33 L. Ed. 118; *People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 559, 19 Am. Rep. 211; *United States* v. *Rodgers*, 23 Fed. 658; *Elliott* v. *Peirsol*, 1 Pet. 328, 7 L. Ed. 164.)

*Mr. Albert J. Galen*, and *Mr. E. M. Hall*, for Respondent.

The term "individual" has been construed to include the following: Under a law providing that no abatement shall be

made on the taxes assessed to any individual until he shall have filed a list under oath, it was held that the term includes both individual persons and corporations. (*Otis Co.* v. *Inhabitants of Ware,* 74 Mass. 509.) "Individuals," as used in an act providing for an *ad valorem* tax of one per cent on all moneys loaned on interest by individuals, was held to include natural persons, foreign banks and corporations. (*Bank of United States* v. *State,* 20 Miss. 456.) Under a law providing that telegraph companies shall receive dispatches from an individual, the word "individual" was construed to be used in the sense of "person," and to embrace artificial or corporate persons, as well as natural. (*State* v. *Bell Tel. Co.,* 36 Ohio St. 296, 38 Am. Rep. 583. See, also, 4 Words and Phrases.) In the light of the above authorities, we submit that the word "individual," when defining a banker, is clearly broad enough to include a private person engaged in banking, or, in other words, to include "private banker." The courts do not seem to make any distinction between private and individual bankers, where such difference is not created by express statute. (*State ex rel. Jones* v. *Cook,* 174 Mo. 100, 73 S. W. 489; *State* v. *Newberry,* 71 N. J. L. 18, 58 Atl. 163; *State* v. *Arnold,* 140 Ind. 628, 38 N. E. 820.)

MR. JUSTICE SMITH delivered the opinion of the court.

Chapter XI, Title XIII, Penal Code of this state, bears the following chapter heading, so called: "Fraudulent Insolvencies by Corporations, and Other Frauds in Their Management." Section 986 of that chapter reads as follows: "Every officer, agent, teller or clerk of any bank, and every individual banker, teller or clerk of any individual banker, who receives any deposits, knowing that such bank or association or banker is insolvent, is guilty of a felony." The section heading, so called referring to section 986, is: "Receiving Deposits in Insolvent Banks."

The county attorney of Deer Lodge county filed in the district court of that county an information against the above-named

complainant, G. S. E. Wisner, basing said accusation upon section 986, just quoted. The information in its charging part reads thus: "G. S. E. Wisner, the defendant above named, is accused by John H. Tolan, county attorney of Deer Lodge county, state of Montana, by this information of the crime of receiving deposits, knowing individual banker to be insolvent, a felony, committed as follows: That the said G. S. E. Wisner, on or about the 3d day of August, 1906, at the county of Deer Lodge, state of Montana, did then and there unlawfully, willfully and feloniously receive and accept the sum of four hundred ($400) dollars, as a cash deposit from Walter Reynolds, the said cash deposits being then and there lawful money of the United States and the property of the said Walter Reynolds; the said cash deposits mentioned aforesaid being then and there received and accepted by the said defendant for and on behalf of one M. J. FitzPatrick, and the said M. J. FitzPatrick, being then and there an individual banker, and the said defendant being then and there clerk and agent of the said M. J. Fitz-Patrick, the said defendant as clerk and agent of the said M. J. FitzPatrick receiving and accepting the deposits mentioned aforesaid, then and there knowing that the said M. J. FitzPatrick was then and there insolvent, and the said M. J. FitzPatrick being then and there insolvent, contrary to the form, force, and effect of the statute in such case made and provided and against the peace and dignity of the state of Montana."

The defendant was convicted and sentenced to the penitentiary. The sentence was stayed, however, pending an appeal to this court, by the trial court signing a certificate of probable cause for the appeal, and defendant is now in the custody of the sheriff of Deer Lodge county. He has filed his petition for a writ of *habeas corpus*, alleging that he is restrained of his liberty by the sheriff, illegally, for the reason that the judgment of his conviction is null and void, because the district court "had no jurisdiction of the pretended offense attempted to be charged in the information, and said information charges an offense unknown to the laws of the state of Montana."

It is argued by complainant's counsel that the only kind of banks known to, and authorized by, the laws of this state, are banks incorporated under the laws of the state and private banks, and that the only kind of bankers known to, and authorized by, the laws of the state, are those connected with incorporated banks and those known as private bankers; that "individual bankers" were at the time it is alleged this offense was committed, and are now, wholly unknown to, and unauthorized by, the laws of this state, and could not and did not exist in the state; that the term "individual banker" does not mean private banker.

Both California and Idaho have statutes almost identical with ours, but they have never been construed by the courts of those states. The term "individual banker" appears to have been first employed in the state of New York as far back as the year 1840, at least. (N. Y. Laws 1840, Chap. 363, p. 306.) In the case of *People* v. *Doty*, 80 N. Y. 225, decided in 1880, the court held that the term "individual banker," as used in the provisions of an Act of the New York legislature, passed in 1875, relating to savings banks, which declared it "not to be lawful for any bank, banking association, or individual banker to advertise or put forth a sign as a savings bank," applied only to one who had availed himself of the banking statutes of the state and had become empowered to do banking thereunder, and did not apply to a private banker who exercised in his business no more than the rights and privileges common to all.

In the case of *Perkins* v. *Smith*, 116 N. Y. 441, 23 N. E. 21, decided in 1889, the same court said: "Since the passage of Chapter 363, Laws 1840, the term 'individual banker' has been frequently used in our statutes and reports and has acquired a definite meaning. It denotes a person who, having complied with the statutory requirements, has received authority from the banking department to engage in the business of banking, subject to its inspection, supervision, and to the burdens imposed. Private bankers are persons or firms engaged in banking, without having any special privileges or authority from the state."

In the case of *Hall* v. *Baker,* 66 App. Div. 131, 72 N. Y. Supp. 965, the court said: "The distinction between an individual banker and a private banker is well known and recognized in all our statutes and by the decisions of the court."

The "individual banker," in his capacity as such, was a creature of the New York statute. He enjoyed certain privileges, as, for instance, the right to issue circulating notes under certain conditions; and he was subject to restrictions, as, among others, that he was compelled to make reports to the controller, by whom his books, papers, and accounts were subject to examination, and he was obliged to have a fixed place of business in some certain city or town. So well defined had the term "individual banker" become in the legal phraseology in the state of New York that the legislature of that state, in 1892, three years before the adoption of our Codes, passed a law embodying the definition in the following words: "The term, 'individual banker,' when so used, means a person who has complied with the requirements of law, and is authorized by the banking department to engage in the business of banking and is subject to the supervision of the superintendent of banks and the banking law." And in 1902 the Penal Code of that state was amended so as to make it a misdemeanor for any officer, agent, teller, or clerk of any bank, banking association, or savings bank, or any individual banker or agent, or any *private* banker or agent, to receive deposits knowing the bank, association, or banker to be insolvent. (Parker's New York Criminal and Penal Code, Annotated 1906, p. 238, sec. 601.)

It appears, therefore, that the term "individual banker" had a well-defined legal and technical meaning, both by judicial construction and statutory enactment, in the sister state of New York at the time our section 986, Penal Code, *supra,* was adopted; that the term "private banker" also had a popular meaning and a definite legal meaning other than that given to the term "individual banker."

But our laws do not provide for any such legal entity as an individual banker; whereas, it is a matter of common knowledge that we have private bankers and private banking copartnerships in this state, and did have prior to the adoption of the Codes in 1895. It is therefore contended by the attorney general that the legislature in adopting our Code, section 986, could not have intended to include therein a person unknown to our law, to-wit, an "individual banker" as known in New York, but must have used the words in their popular sense, as meaning one person banking alone, or a private banker. This, however, is not an unanswerable argument. In passing, it may be remarked that such an interpretation of the section would exclude from the operation thereof an association of private bankers doing business as copartners, because such persons would not be engaged as individuals, and, further, that the chapter in terms includes joint-stock associations, which latter were not provided for, in the Codes, at the time of their adoption. Montana is a comparatively young state, and we know that many of our statutes and Code provisions were taken from the laws of other commonwealths. Indeed, the effort was made to incorporate in our laws, so far as local conditions made it advisable, all of the best regulations relating to modern forms of government, as found in the statutes of the different states of the Union. It is not a violent or unreasonable presumption that the legislature, in adopting the Codes, intended to provide, so far as possible, laws that should be comprehensive in terms and not necessary of amendment in order to meet succeeding changes of condition as the state developed, and the provisions of particular statutes thereafter to be enacted. Courts have heretofore acted upon this presumption.

In the case of *Ritchey* v. *People*, 22 Colo. 251, 43 Pac. 1026, the court said: "The strongest argument against this conclusion arises from the fact that in this state we have never had corporal punishment in the sense in which it is herein defined, but this argument loses much of its force when we remember that many of our statutes were taken from states where the

great body of the law is essentially different." And the court held that the term "corporal punishment" in a statute meant punishment upon the body, such as whipping, rather than pun-. ishment of the body, such as imprisonment, despite the fact that there was no law of the state providing for punishment upon the body in any case.

But in this discussion we are, at most, dealing only with presumptions in order to arrive at the legislative intent, and we are of opinion that the intent may best be ascertained by reference to other provisions of the chapter in which section 986 is found.

After an inspection of the report of the Code Commission, submitted to the legislature with the draft of the Codes of 1895, we are unable to say conclusively that our law was taken from the statute of New York. The same law, substantially, is upon the statute books of California, where neither the legislature nor the courts have ever defined the term "individual banker."

We are, then, to judge, if we can, whether our legislature intended to adopt the interpretation placed upon the words in New York. In the first place, we find that the chapter number of the New York statute is the same as our own: Chapter XI; the chapter headings are the same: "Fraudulent Insolvencies by Corporations and Other Frauds in Their Management." The section headings, or references to the sections following, are in some instances identical, as, for instance, section 591 (New York): "Fraudulent Issue of Stock, Scrip," etc., is the same as our section 981; and section heading 594 (New York) is the same as our section heading 984. These headings are significant.

In the case of *Hardesty* v. *Largey Lumber Co.*, 34 Mont. 151, 86 Pac. 29, this court said: "We are unable to determine whether (these) Code provisions were taken from the Code of California or from the Code of one of the Dakotas. * * * It is worthy of note, in passing, that the arrangement of the respective Codes of all these states is precisely the same. * * * This division of the Code into Divisions, Parts, Titles, Chapters, Articles and sections, is one of the instrumentalities by which the Code may be construed, and the particular title of each of these subdivi-

sions, which was arranged in the bill and adopted as a part of the Code itself, may be referred to and considered in determining the meaning of each subdivision. It is an elementary principle of statutory construction that all sections upon the same subject matter are to be taken as one law and construed together."

In *People* v. *Molineux,* 53 Barb. 15, the supreme court of New York said: "The inscription to Chapter 5 is not in any sense a title to a statute. It forms a part of the body of the Act quite as much as the section cited, and it was inserted for the purpose of controlling and limiting the scope and application of the general words used in the chapter." (See, also, *Barnes* v. *Jones,* 51 Cal. 303; *Sharon* v. *Sharon,* 75 Cal. 1, 16 Pac. 345.)

"These headnotes are a portion of the statute, and may be examined for the purpose of determining the particular intent of the legislature with regard to the chapters in which they are placed." (*Keyes* v. *Cyrus,* 100 Cal. 322, 38 Am. St. Rep. 296, 34 Pac. 722.)

Examining, then, these so-called headnotes or chapter headings, as we may and should do, we find that Chapter XI by its heading refers solely to the management of *corporations,* and a reading of all of the sections of this Chapter (excluding for the moment section 986) discloses the fact that all of the sections refer to the management of corporations, joint-stock associations, and railroad companies.

In the case of *State* v. *Kelsey,* 89 Mo. 623, 1 S. W. 838, it was held that, under the Missouri statute declaring that "if any president, director, manager, cashier or other officer of any banking institution shall receive a deposit after he has knowledge that the bank is insolvent, he shall be guilty of larceny," the words "banking institution" meant an incorporated bank. Section 990 of our Penal Code refers to "every officer, agent or stockholder of any railroad company." The supreme court of Missouri, in the case last cited, said: "Can it be pretended that any other than an incorporated railroad company was intended by the use of the words 'any railroad company'? We think

not." (See, also, *State* v. *Reid,* 125 Mo. 43, 28 S. W. 172; *Daly Bank & Trust Co.* v. *Great Falls St. Ry. Co.,* 32 Mont. 298, 80 Pac. 252.) In the case of *Way* v. *Butterworth,* 108 Mass. 509, it was held that the office of a private banker was not a bank within the terms of a note made payable at "any bank in Boston."

We conclude, therefore, that Chapter XI was intended to, and does, refer only to frauds in the management of corporations and joint-stock companies. These latter have many characteristics of a corporation, and it has been said that it may not be improper to call such an association a quasi corporation. (23 Cyc. 467.)

When we reflect that in the state of New York these so-called "individual bankers," so far as the conduct of their business was concerned, were subject to many of the same restrictions as those placed upon banking corporations, we discover the reason for including such persons in the penal statute of that state. Indeed, it was there held at one time that an "individual banker" was a corporation sole. (*Bank of Havana* v. *Wickham,* 16 How. Pr. 97.)

We have found that the phrase "individual banker" had a well-defined, technical, and legal meaning in the state of New York at the time of the adoption of our Codes, and that it did not have the popular meaning conveyed by the term "private banker." Paragraph 16, of section 7, Penal Code, reads as follows: "Words and phrases must be construed according to the context and the approved usage of the language, but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, must be construed according to such peculiar and appropriate meaning." In the case of *Perkins* v. *Smith, supra,* the court used this language: "Words having a precise and well-settled meaning in the jurisprudence of a country are to be understood in the same sense when used in statutes, unless a different meaning is unmistakably intended."

The supreme court of Alabama, in *Bragg* v. *State,* 134 Ala. 165, 32 South. 767, 58 L. R. A. 925, quotes with approval this language from Endlich's work on the Interpretation of Stat-

utes, page 94: "The words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment, and the object which the legislature has in view. Their meaning is found not so much in a strictly grammatical or etymological propriety of language, nor even in its popular use, as in the subject or in the occasion on which they are used, and the object to be attained. That is, in the construction of a statute, * * * words are to be understood not according to their mere ordinary general meanings, but according to their ordinary meaning as applied to the subject matter with regard to which they are used. * * * But the rule giving to a word its technical meaning holds equally good in the construction of statutes dealing with other subjects as to which words and phrases used in a statute have acquired such a meaning, whether it be a legal, technical meaning or not; i. e., whether it be a technical meaning which the word or phrase has acquired in the law, or a technical meaning which it has acquired in any other science, art, or business, if the enactment relate to any of these, the technical meaning the word has in the law, in any other science, in any art, or in any business, is to be given it, according as one or the other is the subject of the enactment."

The supreme court of Colorado, in *In re Internal Improvement Fund*, 24 Colo. 247, 48 Pac. 808, said: "The Enabling Act does not specify what kind of improvements shall be considered internal improvements; hence we must consider the sense in which these words are used in American legislation. Therefore, if they have by common legislative usage and judicial construction acquired a fixed historical meaning, such meaning must control, rather than the etymological definition of the words themselves." (See, also, 2 Lewis' Sutherland on Statutory Construction, sec. 398.)

In *United States* v. *Jones*, 3 Wash. C. C. 209, 26 Fed. Cas. 653, the court said: "If a statute of the United States uses a technical term, which is known, and its meaning fully ascertained by the common or civil law, from one or the other of which it is obviously borrowed, no doubt can exist that it is necessary to

refer to the source from which it is taken for its precise meaning.''

Again, as we find the same statute, with the exception of the designation of the degree of the offense, in the state of New York prior to its adoption here, it may be presumed that we adopted it from that state, together with the construction placed upon it by the courts of that state. The supreme court of the United States, in *Coulan* v. *Doull*, 133 U. S. 216, 10 Sup. Ct. 253, 33 L. Ed. 596, referring to a statute first adopted in Massachusetts, then in California, and later in Utah, said this: ''The rule ordinarily followed in construing statutes is to adopt the construction of the courts of the country by whose legislature the statute was originally adopted.'' As to the second proposition above stated, we have abundant authority in the decisions of our own court. (See *Nelson* v. *Great Northern Ry. Co.*, 28 Mont. 297, 72 Pac. 642; *McQueeney* v. *Toomey, ante,* p. 282, 92 Pac. 561.)

For the reasons, then, that the term ''individual banker'' was used in a statute of New York, and as so used had been interpreted by the courts of that state as meaning one other than a private banker, prior to the adoption of our Codes, that the term had acquired a fixed and definite meaning in the law other than its etymological definition prior to that time, that in its use in our Penal Code it is found in a chapter devoted entirely to acts and omissions of officers and agents of corporations and quasi corporations, that we have no such person in this state as an ''individual banker,'' we are of opinion that the term as used in section 986 does not mean ''private banker,'' and that the defendant was convicted of an offense unknown to our laws.

Had we any reasonable doubt as to the correctness of the foregoing conclusions, it would be our duty to resolve the same in favor of the innocence of the defendant on this particular charge. (*Cook* v. *State,* 26 Ind. App. 278, 59 N. E. 489; *The Enterprise,* 1 Paine, 32, 8 Fed. Cas. 732.) See *State* v. *Cudahy Packing Co.*, 33 Mont. at p. 190, 114 Am. St. Rep. 804, 82 Pac. 833, as to how penal statutes must be construed.

As was done in New York, it will be necessary for our legislature to amend section 986, if it is desired to include within its provisions the private banker. It was well said in *People* v. *Doty, supra,* "The lawmaker needs to take one step further to lay hold of such a wrongdoer. The courts cannot stretch a penal statute by construction so as to ensnare him."

It follows that the judgment of conviction complained of is void, and that complainant must be discharged from custody thereunder, and it is so ordered.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.